**REYNOLDS METALS COMPANY,**
**Plaintiff,**

v.

**Donald H. RUMSFELD et al.,**
**Defendants.**

**Civ. A. No. 76–302–A.**

United States District Court,
E. D. Virginia,
Alexandria Division.

July 27, 1976.

---

Austin B. Graff and C. Allen Riggins, Richmond, Va., Burt A. Braverman, Alan Raywid and Joseph Reifer of Cole, Zylstra & Raywid, Washington, D. C., for Reynolds Metals Co.

William B. Cummings, U.S. Atty., Norfolk, Va., and Elsie Powell, Asst. U.S. Atty., Alexandria, Va., S. Jennifer Johnson and Edward J. Demsey, E. E. O. C., Washington, D. C., Jeffrey Axelrad and Catherine A. Ribnick, Civ. Div., Dept. of Justice, Washington, D. C., for defendants; James Kraft, Dept. of Labor, and Edmund A. Miarecki, Defense Supply Agency, Alexandria, Va., of counsel.

## MEMORANDUM OPINION AND ORDER

ALBERT V. BRYAN, Jr., District Judge.

This action attacks a 1974 Memorandum of Understanding between the Equal Employment Opportunity Commission (EEOC) and the Office of Federal Contract Compli-

ance, now called the Office of Federal Contract Compliance Programs (OFCCP), of the Department of Labor. Both of these agencies are responsible for enforcing the national policy of equal employment opportunities regardless of race, color, religion, sex or national origin.[1] The twelve paragraph Memorandum, which is attached as Appendix I, provides for informational exchanges between the two agencies and, in Paragraph 10, provides that complaints filed with OFCCP shall be deemed charges filed with EEOC. The information exchanged includes "raw" data submitted to the agencies by employers and reports prepared by the government agencies; i. e., EEOC, OFCCP and the individual compliance agencies contracting with the private sector. The Defense Supply Agency (DSA) is one such compliance agency.

Plaintiff Reynolds Metals Company (Reynolds), as a government contractor, is required to comply with Executive Orders 11246 and 11375 (30 Fed.Reg. 12319 and 32 Fed.Reg. 14303) and with OFCCP's implementing rules and regulations. Among these regulations is the requirement that Reynolds submit to its compliance agency affirmative action programs (AAP's), which are workforce analyses of all major job groups in an employer's facilities.[2] The compliance agency, DSA, uses these AAP's in reviewing Reynolds to determine whether the policy of equal employment opportunities is being followed. DSA's conclusions are then gathered in its compliance review reports. 41 C.F.R. § 60–60.1 *et seq.*

Pursuant to the Memorandum, DSA has been requested to make available to EEOC copies of all of the AAP's and related contractor documents concerned with Reynolds' Sheffield, Alabama facility.[3] Reynolds is not required, and has not volunteered, to submit these directly to EEOC. In this action it challenges the legality of the informational exchange as outlined in the Memorandum of Understanding as well as Paragraph 10.

■ Declaratory and injunctive relief are sought. Jurisdiction is asserted on a number of grounds. The Court concludes that there is jurisdiction under 28 U.S.C. § 1331(a) because the amount in controversy is sufficiently alleged and the case arises under 44 U.S.C. § 3501 *et seq.* and under Executive Order 11246 and regulations promulgated thereunder. Additionally, there is jurisdiction under 28 U.S.C. § 1337 because the case arises under 42 U.S.C. § 2000e *et seq.* Finally, there is jurisdiction under 5 U.S.C. § 704 because the case arises under 5 U.S.C. § 553.

The matter was argued on June 25, 1976, on the defendants' Motion to Dismiss, or in the alternative for Summary Judgment, and on plaintiff's Motion for Summary Judgment. The parties agree that there is no genuine issue as to any material fact; that the facts are not in dispute; and that the action may be determined without the need of additional evidence. The plaintiff has submitted proposed findings of fact, and the Court, with certain exceptions and

---

1. EEOC is empowered to prevent unlawful employment discrimination generally. Section 706 of Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 2000e–5. In contrast, OFCCP deals only with equal employment opportunities among government contractors. Executive Order No. 11246, § 202, § 401; 41 C.F.R. § 60–1.2.

2. "An acceptable affirmative program must include an analysis of areas within which the contractor is deficient in the utilization of minority groups and women and further, goals and timetables to which the contractor's good faith efforts must be directed to correct the deficiencies and, thus to achieve prompt and full utilization of minorities and women, at all levels and in all segments of his workforce where deficiencies exist." 41 C.F.R. § 60–2.10.

3. As is seen from Appendix I, the Memorandum imposes various requirements upon the two agencies. Although the plaintiff attacks the Memorandum as a whole, its argument as to its immediate effect centers around the threatened availability of the AAP's to the EEOC pursuant to Paragraph 1 of the Memorandum. Moreover, the defendants have conceded that Paragraphs 1, 2, 8, 9 and 10 of the Memorandum have been implemented with respect to the plaintiff. Answers to Interrogatory No. 2. This, in the Court's view, is dispositive of the issue whether plaintiffs have standing, at least insofar as those paragraphs are concerned, to contest their validity.

even though they are at times conclusory or argumentative,[4] adopts them as its findings of fact in support of the summary judgment award.

In their Motion to Dismiss the defendants raise, first, the defense that while nominally against the individual parties, the action is in fact against the United States and is barred by the doctrine of sovereign immunity.

■ In rejecting this defense the Court need only quote what it said in *Westinghouse Electric Corp. v. Schlesinger*, 392 F.Supp. 1246, 1248 (E.D.Va.1974):

> The Court concludes that the relief sought, if granted, would not "expend itself on the public treasury or domain, or interfere with the public administration" to the extent that the Government would be "stopped in its tracks." *Land v. Dollar*, 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 704, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); and that the actions of the federal officers are sufficiently alleged to be beyond their statutory powers so that those actions would not be the actions of the sovereign. *Dugan v. Rank*, 372 U.S. 609, 621, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963).

■ Defendants also raise the question whether there is a case or controversy ripe for judicial resolution. Closely related to this is the question of standing, also contested by defendants. Insofar as the *Motion to Dismiss* is concerned, where the sufficiency of the complaint is to be tested by its *allegations*, these defenses must be rejected. There is a sufficient allegation of substantial and immediate impact on the plaintiff by defendants' actions. *Gardner v. Toilet Goods Ass'n.* 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). Although the actual extent of this impact will be discussed *infra* in the part of the opinion addressing the motions for summary judgment, the allegations of impact are sufficient to survive the challenge to justiciability and standing.

The Motion to Dismiss must, therefore, be denied.

The Court turns, then, to the motions for summary judgment. The Memorandum is attacked on a number of grounds. First, that it violates the Federal Reports Act, 44 U.S.C. § 3501 *et seq.*; second that it was promulgated in violation of the Administrative Procedure Act (APA), Title VII of the Civil Rights Act of 1964 and the EEOC's own regulations; third, that it violates § 715 of Title VII of the Civil Rights Act of 1964; fourth, that it violates the Congressional intent underlying the Equal Opportunity Act of 1972; fifth, that it seeks to bypass prescribed restrictions on EEOC information gathering; sixth, that defendants failed to obtain necessary General Services Administration (GSA) approval for the Memorandum; and seventh, that it violates established principles of administrative due process by failing to afford a contractor such as the plaintiff an opportunity to be heard.

Because the Memorandum is clearly designed to assist the two agencies in their common goal to eliminate employment discrimination; because both agencies have investigative and cooperative powers to at-

4. The Court rejects proposed finding numbers 11 and 15 as self-serving and, with regard to number 11, as contrary to the Court's conclusion on consent.

The Court rejects proposed finding number 30 because it is a conclusion of law.

The Court rejects proposed finding number 39 because it draws an untenable conclusion of general policy from one specific incident.

The Court also rejects proposed finding number 50 because its breadth suggests that AAP's and related data obtained by EEOC from OFCCP would be available to a charging party. The Court accepts EEOC's contention that it will require charging parties to seek such documents directly from OFCCP. (Defendants' Memorandum in Support of the Motion to Dismiss, or in the Alternative, for Summary Judgment, Exhibit C.)

The Court adopts the following proposed findings as stated in "Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue": 1–9, 13, 14, 16–22, 26–29, 31–35, 37, 38, 41–48.

The Court adopts the following proposed findings as modified in Appendix II: 10, 12, 23, 24, 25, 36, 40 and 49.

tain that goal;[5] and because it makes "sense" that in the interest of efficiency and the public interest they should share information each has which would assist the other in that attainment, the Court concludes that unless the Memorandum is found violative of some of the provisions of law as urged by plaintiff it should stand.

The first argument is that the Memorandum violates the Federal Reports Act. This act was designed to "prevent unnecessary burden or expense to a citizen" required to make reports to the government, 88 Cong. Rec. 9165 (Nov. 27, 1942) and to eliminate unnecessary duplication of reporting requirements. 77 Cong. 2d Sess. U.S.Code Cong. Service, p. 2084 (1942). These burdens are not what is troubling the plaintiff. It is questionable, indeed, whether the subject matter covered by the Memorandum is within the definition of "information" contained in 44 U.S.C. § 3502.[6] Assuming, however, that it is, § 3508(b) must then be examined to see if its terms are met so as to allow interagency disclosure.

It reads as follows:

(b) Information obtained by a Federal agency from a person under this chapter may be released to another Federal agency only—

(1) in the form of statistical totals or summaries; or

(2) if the information as supplied by persons to a Federal agency had not, at the time of collection, been declared by that agency or by a superior authority to be confidential; or

(3) when the persons supplying the information consent to the release of it to a second agency by the agency to which the information was originally supplied; or

(4) when the Federal agency to which another Federal agency releases the information has authority to collect the information itself and the authority is supported by legal provision for criminal penalties against persons failing to supply the information.

■ It is conceded by the defendants that the information intended to be disclosed to EEOC pursuant to the Memorandum will not be "in the form of statistical totals or summaries" as allowed by subsection (b)(1).

■ There has been no declaration at the time of collection, by the collecting agency or by a superior authority, that the information is confidential, so as to fall within

---

5. "Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer . . . has engaged in an unlawful employment practice, the Commission . . . shall make an investigation thereof." 42 U.S.C. § 2000e–5(b). See also 42 U.S.C. § 2000e–8(a).

"The Secretary of Labor may investigate the employment practices of any Government contractor or subcontractor, or initiate such investigation by the appropriate contracting agency, to determine whether or not the contractual provisions specified in Section 202 of this Order have been violated." Executive Order No. 11246, § 206(a). See also § 202(5) and 206(b) of E.O. 11246.

"The Commission shall have power . . . to cooperate with and, with their consent, utilize regional, State, local, and other agencies, both public and private, and individuals . . . ." 42 U.S.C. § 2000e–4(g).

"Information obtained . . . shall be used only in connection with the administration of the Order, the administration of the Civil Rights Act of 1964 (as amended) and in further-

ance of the purposes of the Order and that Act." 41 C.F.R. § 60–1.43.

". . . [T]he Secretary [of Labor] or the appropriate contracting agency may:

　　*　　*　　*　　*　　*　　*

(3) Recommend to the Equal Employment Opportunity Commission or the Department of Justice that appropriate proceedings be instituted under Title VII of the Civil Rights Act of 1964."

E.O. 11246, § 209(a)(3).

6. § 3502:

"As used in this chapter—

　　*　　*　　*　　*　　*　　*

'information' means facts obtained or solicited by the use of written report forms, application forms, schedules, questionnaires, or other similar methods calling either for answers to identical questions from ten or more persons other than agencies, instrumentalities, or employees of the United States or for answers to questions from agencies, instrumentalities, or employees of the United States which are to be used for statistical compilations of general public interest."

subsection (b)(2). Plaintiff argues that the only way it can secure such a declaration is by compliance with 41 C.F.R. § 60–60.4(d).[7] Plaintiff further asserts that a substantial portion of the documents submitted to DSA are confidential, but the DSA has made no such determination nor has it contested the confidentiality asserted. From this plaintiff concludes that the documents *are* confidential. This regulation controls, by its terms, only *public* access to information. The statute, moreover, requires the agency's *declaration* of confidentiality. Whatever remedy Reynolds may have to compel such a declaration or a review of the agency's action or inaction, it is clear that the terms of this subsection of the statute have not been presently met.

■ Subsection (b)(3) allows release of information when the person supplying the information consents. Certainly Reynolds is correct in asserting that it has not explicitly consented to release of its AAP's to EEOC. It is incorrect, however, in saying that it has not implicitly consented. Executive Order 11246 requires, *inter alia*, as terms to any contract with the government, that the contractor obey all rules and regulations promulgated under the Order[8] and that the contractor furnish all information and reports required by the Order and its implementing regulations.[9] An OFCCP regulation, C.F.R. § 60–1.43, note 5 *supra*, states that information will be used in administering Executive Order 11246 *and the*

Civil Rights Act of 1964 as amended. Because the OFCCP and its compliance agencies have no enforcement authority under Title VII of that Act, this regulation can only mean that the information is available to Title VII's enforcement authority, EEOC. This interpretation is more persuasive when one is mindful of the duties among agencies to cooperate cited earlier.[10] In short, Reynolds, in contracting with the government, explicitly consented to the information being used to administer Title VII and, thereby, implicitly consented to that information being made available to Title VII's enforcing agency, the EEOC.

■ The government also argues that subsection (b)(4) is applicable because criminal sanctions may be sought against persons failing to supply information demanded by EEOC. Such a right, at least insofar as the AAP's are concerned, is too indirect to be included within § 3508(b)(4), and the Court does not conclude that that subsection supports the transfer of the information here under consideration.

For reasons stated above, however, the Court does conclude that the Federal Reports Act does not invalidate the exchange of information contemplated by the Memorandum.

The second and, closely related thereto, the seventh, grounds, assert that the Memorandum violates the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.* as

---

**7.** 41 C.F.R. § 60–60.4(d):

"(d) *Public access to information.* Information obtained from a contractor under Subpart B will be subject to the public inspection and copying provisions of the Freedom of Information Act, 5 U.S.C. 552. Contractors should identify any information which they believe is not subject to disclosure under 5 U.S.C. 552, and should specify the reasons why such information is not disclosable. The Contract Compliance Officer will consider the contractors claim and make a determination, within 10 days, as to whether the material in question is exempt from disclosure. The contract compliance officer will inform the contractor of such a determination. The contractor may appeal that ruling to the Director of OFCC within 10 days. The Director of OFCC shall make a final determination within 10 days of the filing of the appeal. However, during the conduct of a

compliance review or while enforcement action against the contractor is in progress or contemplated with a reasonable time, all information obtained from a contractor under Subpart B except information disclosable under §§ 60–40.2 and 60–40.3 of this chapter is to be considered part of an investigatory file compiled for law enforcement purposes within the meaning of 5 U.S.C. 552(b)(7), and such information obtained from a contractor under Subpart B shall be treated as exempt from mandatory disclosure under the Freedom of Information Act during the compliance review."

**8.** E.O. 11246, § 202(4).

**9.** E.O. 11246, § 202(5).

**10.** See Note 5 and accompanying text, *supra*.

made applicable to Title VII by § 713(a), 42 U.S.C. § 2000e–12(a). All parties concede that the Memorandum is a rule as defined in § 551(4) and applied in § 553 of the APA. They disagree, however, on the question whether the Memorandum is within particular exceptions, § 553(a)(2) and § 553(b)(A), to the notice and comment requirements of § 553. In the Court's view whether the Memorandum is within these exceptions depends on whether it is procedural or substantive; more precisely, whether it creates or changes existing rights and obligations. *EEOC v. Raymond Metal Products Co.*, 530 F.2d 590 (4th Cir. 1976); *Lewis-Mota v. Secretary of Labor*, 469 F.2d 478 (2d Cir. 1972). Paragraphs 1, 2, 8 and 9 of the Memorandum [11] involve only the exchange of information, partially as raw data, partially as agency generated reports. These exchanges do not affect any rights and obligations. The plaintiff argues that such exchanges have a substantial impact on its activities, *Lewis-Mota v. Secretary of Labor, supra.* To the extent that the exchanges increase its exposure to liability, Reynolds may subsequently challenge the use of the documents in any eventual litigation. See the Court's consideration of Reynolds' fifth argument *infra.*

■ It is clear that the real reason for plaintiff's concern is that it would rather have the information it submits to OFCCP remain in the hands of that more understanding agency than be turned over to the EEOC which is characterized by the plaintiff as having a "more hostile and adversarial nature." Rejection of this as a reason or as "impact" requires no elaboration.

11. Only ¶¶ 1, 2, 8, 9 and 10 have been implemented as to Reynolds. See Plaintiff's Statement No. 40 as adopted by the Court.

12. Minority Views to House Report on the Equal Employment Opportunity Act of 1972, *U. S. Code Congressional and Administrative News* (1972) at p. 2173. According to Reynolds' research, EEOC's backlog of unprocessed Title VII charges now exceeds 100,000. Plaintiff's Memorandum at 27, n. 1.

13. 42 U.S.C. § 2000e–5(f)(1).

■ Paragraph 10 of the Memorandum is, however, quite different from the others. Rather than describing EEOC's procedural mechanism, it allows a complaint directed to another agency to initiate EEOC's own procedural mechanism. Unlike the regulation challenged in *Raymond, supra,* Paragraph 10 does not simply prescribe "the methods by which the agency acts." Instead it provides an entirely new device for initiating those methods. In other words, this rule is not simply a new key for starting the engine; rather it provides a way to jump start the engine. Given the backlog of EEOC charges [12] and the exposure to liability after 180 days of the filing,[13] the Court holds that Paragraph 10 creates a substantial impact[14] on Reynolds. Therefore, it is invalid for failure to comply with the notice and comment requirements of 5 U.S.C. § 553.

Because Paragraph 10 is clearly separable from the remainder of the Memorandum, its invalidity does not affect the remainder. *Fowler v. Gage*, 301 F.2d 775 (10th Cir. 1962).

A part of Reynolds' second argument concerns § 709(c) of Title VII and its implementing regulations, 29 C.F.R. §§ 1602.1–1602.4. This statutory provision, 42 U.S.C. § 2000e–8(c), states:

> Every employer . . . shall . . (3) make such reports therefrom as the Commission [i. e., EEOC] shall prescribe by regulation or order, after public hearing, as reasonable, necessary, or appropriate for the enforcement of this subchapter or the regulations or orders thereunder.

14. Reynolds argues a second type of "substantial impact" (seventh argument). However, rather than describing the Memorandum itself as the final agency action, this argument construes each interagency exchange of information as the "agency action." Such a construction, according to Reynolds, requires some kind of hearing to challenge the exchange. This Court disagrees with Reynolds' bald conclusion that the mere transfer of documents harms Reynolds and constitutes impact. To impose hearing requirements for all such bureaucratic activity would halt virtually all government work.

Reynolds objects to the Memorandum because it was not preceded by a public hearing. Section 709(c) is only applicable, however, when EEOC requires reports directly from an employer. Presumably the rationale of the provision is that employers be allowed to comment prior to the imposition of unduly burdensome paperwork requirements. That rationale is irrelevant to the Memorandum, which makes no direct reporting demands on the employer. Therefore, the Memorandum withstands an attack based on § 709(c).

Reynolds fourth ground is that the Memorandum is contrary to the Congressional intent underlying the Equal Employment Opportunity Act of 1972. From the failure of Congress to enact a provision transferring OFCCP's duties to EEOC, Reynolds infers that the Memorandum violates Congressional intent. Such an inference is not, however, well founded. The refusal of Congress to merge OFCCP into EEOC cannot reasonably be interpreted as forbidding all cooperation between the two agencies. The Memorandum's provisions dealing with the exchange of information are surely expressions of cooperation for efficiency that do not violate the Congressional intent manifested in the rejection of the merger provision.

Paragraph 10, however, raises a more serious question concerning a violation of Congressional intent. Given its disposition of this paragraph, the Court need not, however, address the issue in this case, for the agencies may well decide after public comment not to promulgate Paragraph 10.

Reynolds' fifth ground is that the Memorandum violates EEOC information-gathering procedures as defined in § 710, 42 U.S.C. § 2000e–9. That provision adopts the investigatory mechanism of the National Labor Relations Board (NLRB) as explained in 29 U.S.C. § 161. Under these procedures, an employer can deny a request for documents and, by doing so, require the EEOC to issue an administrative subpoena. This subpoena can then be challenged in district court for the relevance and breadth of the documents sought. Reynolds complains that the Memorandum circumvents this method of challenge. Like the reporting requirement of § 709(c), however, this subpoena process is applicable only to documents requested directly from the person being investigated. Only in that circumstance is an employer unduly burdened by the time and expense of producing records. The subpoena process is designed to prevent such burdens. Challenges to interagency exchanges are not based on burdensomeness to the employer but on other evidentiary grounds. An employer can pose such objections, based on relevance and privilege, if and when federal court litigation occurs.[15]

The third and sixth grounds require little discussion. The third seeks to invalidate the Memorandum because it does not include as parties the members of the Equal Employment Opportunity Coordinating Council. Plaintiff cites no authority for the proposition that the cooperation between the agencies authorized by the various statutes, the Executive Order, and regulations is to be exercised solely through the Council. Nor is the Court willing to imply such a limitation on that cooperation. The sixth ground addresses itself to whether the Memorandum constitutes an interagency reporting requirement within the meaning of the Interagency Reports Management program, 41 C.F.R. § 101–11.1100 *et seq.* It would be an absurdity to invalidate the Memorandum because the GSA requirement that its approval be obtained before data can be transmitted from one agency to another had not been complied with. Moreover the program outlined in the regulation mentioned appears to apply to requirements that one agency gather information for transmission to another agen-

---

**15.** The inapplicability of the subpoena process to interagency exchanges of information is apparent after reading 29 U.S.C. § 161(6). Although it is not clear that § 161(6) is specifically incorporated by 42 U.S.C. § 2000e–9, that subsection does show that challenges to subpoena based on relevance or breadth, provided for in § 161(2), do not control interagency exchanges of records.

cy. There is no such requirement here—the information is submitted to the agencies by the plaintiff without reference to the Memorandum. The Memorandum itself requires persons such as the plaintiff to submit nothing.

For the foregoing reasons summary judgment is awarded the defendants insofar as the declaratory and injunctive relief sought by the plaintiff in connection with Paragraphs 1, 2, 8 and 9 of the Memorandum are concerned; summary judgment is awarded the plaintiff insofar as Paragraph 10 of the Memorandum is concerned; Paragraph 10 is declared to be invalid; a permanent injunction will be awarded plaintiff enjoining defendants, their successors in office, agents, etc., from implementing, insofar as the plaintiff is concerned, Paragraph 10; and it is so ordered.

Counsel for defendants shall prepare a decree embodying, by reference to this Memorandum, the rulings contained herein and awarding the declaratory and injunctive relief above set forth. The decree should be presented for entry after submission to plaintiff's counsel for approval as to form.

### APPENDIX I

#### OFCC–EEOC Memorandum of Understanding

*Following is the full text of a memorandum of understanding between the Equal Employment Opportunity Commission and the Office of Federal Contract Compliance. The agreement is designed to speed enforcement of EEO [sic] regulations and to improve coordination between the two agencies. It supercedes an earlier agreement and is effective September 11, 1974.*

This Memorandum of Understanding between the Office of Federal Contract Compliance and the Equal Employment Opportunity Commission is being implemented to further the objectives of Congress under Section 715 of Title VII of the Civil Rights Act of 1964, as amended by the Equal Opportunity Amendments of 1972. These objectives are to develop and implement agreements, policies and practices designed to maximize effort, promote efficiency, and eliminate conflict, competition, duplication and inconsistency among the operations, functions and jurisdictions of the parties to this Memorandum.

The parties to this Memorandum agree as follows:

1. The OFCC shall direct the compliance agencies to make available for inspection and copying to the appropriate requesting official of the EEOC or his or her designee any documents pertaining to any respondent against whom a charge has been filed under Title VII of the Civil Rights Act of 1964, including but not limited to affirmative action programs, investigative files, conciliation agreements, compliance review reports, debarment lists, and all supporting data thereto, within ten days of such request, provided such information is available in the files of either the OFCC or the Compliance Agencies.

2. The EEOC shall make available for inspection and copying to the appropriate requesting official of the OFCC or his or her designee any document pertaining to the enforcement of Executive Order 11246, including but not limited to copies of charges, investigative files, Commission Decisions, conciliation agreements, Voluntary Programs data, all pleadings and briefs filed in civil actions brought by the Commission and all supporting data hereto within ten days of such request, provided such information is available in the files of EEOC.

3. "Appropriate Requesting Officials" shall for purpose of the Agreement, be defined as follows:

a. For the Commission:
   1. The Chairman
   2. The Executive Director
   3. The General Counsel
   4. Any Regional Attorney
   5. Any Regional Director
   6. Any District Director

b.  For the OFCC/Compliance Agencies:

1.  The Secretary or Under Secretary of Labor

2.  The Solicitor of Labor

3.  The Director or Deputy Director, OFCC

4.  Any Associate Assistant Regional Director, OFCC

5.  Any Compliance Agency Contract Compliance Officer

6.  Any Compliance Agency Regional Director

4.  Responses to all requests for information shall be made to the official making such request, or his/her designee.

5.  All requests by third parties for disclosure of information shall be referred to the agency which initially compiled or collected the information.

6.  The Secretary and the Chairman shall designate appropriate officials who will promptly advise each other of the respondents/contractors subject to the provisions of Executive Order 11246, as amended, who have been selected by each agency for industry-wide or regional compliance and litigation efforts.  In the event that the agencies select identical respondents/contractors these officials shall reach agreement on the division or [sic] responsibilities in pursuit of their mutual endeavor(s).

7.  (a) The OFCC shall notify and direct the appropriate compliance agency to notify the appropriate EEOC District Director(s) before any matter is noticed for a debarment hearing.  The EEOC District Director will then notify OFCC and the appropriate compliance agency of any matters involving systemic discrimination pending before the Commission concerning the contractor in question.  To the extent that such issues are consistent with the facts disclosed by the compliance review, these issues shall be included by the compliance agency in the "14 Day Notice of Intent to Debar" and will be diligently prosecuted by the Compliance Agency.

(b) EEOC shall notify the Director of OFCC and the appropriate agency Contract Compliance Officer of cases being considered for litigation against Federal contractors with a summary of the issues and EEOC findings.  The agency Contract Compliance Officer will then notify EEOC of any matters involving systemic discrimination pending before the agency concerning the contractor in question.  To the extent that such issues are consistent with the facts disclosed by the EEOC investigation, such issues shall be included by EEOC in the complaint filed in Federal District Court and will be diligently prosecuted by EEOC.

8.  The parties shall exchange information as follows:

(a) OFCC will provide EEOC regional offices with:

1.  Copies of reports from Compliance Agencies outlining contractor compliance reviews proposed for each quarter.

2.  A listing of compliance reviews actually completed each quarter indicating the results of such reviews.

(b) EEOC will provide OFCC with:

1.  A printout of active/inactive charges within District Offices.  The printout shall contain the following data items:

(a) Charge number

(b) Name of Charging Party

(c) Name of Respondent

(d) Location of Respondent

(e) Bases

(f) Issues

(g) Type Respondent # 1

(h) Current Status date and code

(i) Current Status definitions

2.  A quarterly list of subsequent new charges received in Headquarters from each District Office.

3.  A copy of each conciliation agreement and court settlement involving systemic discrimination by Federal contractors.

9.  Prior to the investigation or review of any facility, the appropriate investigative

or compliance officials of EEOC, OFCC, or the Compliance Agencies shall notify each other of their pending activity, and shall determine:

(a) Whether the contacted agency has outstanding complaints of discrimination at the facility to be investigated/reviewed. If so, the subject matter of such complaints shall be considered in the review or investigation. Insofar as the complaints involve systemic discrimination, their subject matter will be concluded in any conciliation agreement reached between the employer and the reviewing agency. EEOC complainants will not waive any rights they may have under Title VII as the result of an OFCC or Compliance Agency resolution.

(b) Whether the contacted agency also plans to investigate or review the identical facility. If so, the appropriate officials from each agency shall confer as to the scheduling and coordination of their compliance efforts.

10. Complaints filed with OFCC shall be deemed charges filed with EEOC and OFCC shall promptly transmit such charges to the appropriate EEOC District Office.

11. It is agreed by both agencies that consistent procedures and policies and full interchangeability of compliance determinations are basic to full coordination of their activities. Therefore, it is the intention of the agencies to develop mutually compatible investigative procedures and compliance policies, including minimum standards of remedy. The parties will designate members of a task force to develop such standards, which will commence meetings as soon as possible after the signing of this Memorandum.

12. EEOC and OFCC shall conduct periodic reviews of the implementation of this agreement, and shall, on an ongoing basis, continue their efforts to develop consistent systems, procedures, and standards in furtherance of the purposes of this agreement.

This Memorandum of Understanding supersedes the agreement signed on May 20, 1970.

/s/ John H. Powell, Jr.
Chairman, Equal Employment Opportunity Commission

/s/ Peter J. Brennan,
Secretary, U. S. Department of Labor

/s/ Philip J. Davis,
Director of Federal Contract Compliance

## APPENDIX II

10. The information contained in the AAP's and supportive data and documents collected from plaintiff during compliance reviews by defendants Rumsfeld, Vaughan, Usery and Lorber, and their respective agents and employees, would not, as a matter of plaintiff's company policy, be voluntarily furnished by plaintiff to the Equal Employment Opportunity Commission or to any member of the public. [Affidavit of Fred R. Edney (Attachment B to Plaintiff's Statement), ¶ 3].

12. Plaintiff's AAP's and related workforce information have not been furnished by the plaintiff to any persons or government agencies other than OFCCP and its contract compliance agencies.

23. The first EEOC request was for documents to be used in conjunction with the development of Reynolds as a proposed respondent for § 707 action by the EEOC. [Defendants' Answer No. 38(b)].

24. During its review of plaintiff's Sheffield operations, EEOC did not have available to it statistics concerning the job classifications and populations by job classifications for the different departments comprising a production facility. [Deposition of Edward J. Dem-

sey, Esq., p. 32 (attachment E to Plaintiff's Statement)].

25. When EEOC first requested to inspect DSA files concerning the Sheffield operations, the request was not in the context of pending charges. [Demsey Deposition, pp. 27–28].

36. Within the categories of documents covered by the Memorandum of Understanding, there are no categories which OFCCP, DSA or other compliance agencies may not disclose, or in their discretion may refuse to disclose, to EEOC; or which EEOC may not disclose, or in its discretion may refuse to disclose, to OFCCP, DSA or other compliance agencies. [Defendants' Admission No. 20].

40. The Court adopts this proposed finding. Its authority is found in Defendants' Answer No. 21, however, not Answer No. 2.

49. Certain Title VII charges filed against plaintiff at the EEOC which plaintiff desires to have promptly investigated and, where appropriate, conciliated have now been pending before the EEOC for as much as three years. [Edney Affidavit, ¶ 7].