465 F.Supp. 22 (1978)
McDONNELL DOUGLAS CORPORATION, Plaintiff,
v.
Ray MARSHALL et al., Defendants.
EMERSON ELECTRIC COMPANY, Plaintiff,
v.
Harold BROWN et al., Defendants.
CHRYSLER CORPORATION, Plaintiff,
v.
Ray MARSHALL et al., Defendants.
Nos. 75-103C(B), 75-55C(B) and 74-850C(B).
United States District Court, E. D. Missouri, E. D.
November 29, 1978.
*23 *24 Edward J. White, Alexandria, Va., Thomas M. Hanna, Clayton, Mo., Burt A. Braverman and Alan Raywid, Washington, D. C., John C. Rohrbaugh, St. Louis, Mo., for plaintiffs.
Donald J. Stohr, U. S. Atty., St. Louis, Mo., S. Jennifer Johnson, Atty., EEOC, Washington, D. C., for defendants.

MEMORANDUM OPINION
REGAN, District Judge.
In each of these consolidated actions declaratory and injunctive relief is sought based on the alleged invalidity of a 1974 Memorandum of Understanding between Equal Employment Opportunity Commission (EEOC) and the Office of Federal Contract Compliance Programs (OFCCP) of the Department of Labor. The suits were in each instance precipitated by a notice to the plaintiff that a compliance agency had received a request from EEOC for documents relating to that plaintiff and that the agency intended to comply with the request. Defendants have moved to dismiss or alternatively for summary judgment.
The Memorandum of Understanding under attack was published in 39 Federal Register 35853 (1974). Its full text has been reproduced in 417 F.Supp. 365, 376, as an appendix to the opinion in Reynolds Metals Co. v. Rumsfeld, D.C.Va.1976. It provides, inter alia, for exchange of information between the agencies parties thereto concerning employer compliance with antidiscrimination laws and regulations. For a number of years prior to the execution of the 1974 Memorandum of Understanding and an earlier 1970 Memorandum which it superseded, comparable information had been shared on an informal basis.
Each plaintiff is a government contractor and by reason of this business relationship with the government and its agencies, must comply with Executive Order 11246 (as amended by Executive Order 11375) and the regulations promulgated thereunder by OFCCP.[1] The Executive Order and regulations require each such contractor to file reports with a designated compliance agency for each of its facilities as well as separate ones for its entire domestic operations on Standard Form 100 (EEO-1),[2] and also *25 to develop and maintain so-called "affirmative action programs" (AAPs) which are analyses of the composition of the contractor's workforce at each of its facilities and its success or failure in taking affirmative action under the Executive Order to correct deficiencies in affording equal employment opportunities to minority workers and women.
A contractor's AAPs are furnished to a compliance agency in the course of its reviews of the contractor's facilities to determine whether the policy of equal employment opportunities is being followed. The agency's conclusions, drawn in large part from data and documents furnished by the contractor, are set forth in its compliance review reports. A contractor which fails to comply with the Executive Order and the implementing regulations thereunder is subject to the imposition of sanctions, including the cancellation of existing contracts and debarment from further government contracts or subcontracts.
Section 703(a) of Title VII (42 U.S.C. § 2000e-2) prohibits an employer from discriminating against an individual in any aspect of employment "because of such individual's race, color, religion, sex, or national origin." The Executive Order mandates that government contractors contractually agree that they will not discriminate against any employee or applicant for employment "because of race, color, religion, sex, or national origin." Hence, it cannot be gainsaid that both EEOC and OFCCP share in the responsibility for enforcing the national policy of equal employment opportunities without regard to race, color, religion, sex, or national origin. Their ultimate goals are the same, although their specific areas of responsibility overlap. "EEOC's function is to prevent unlawful employment discrimination generally, whereas OFCCP monitors government contractors to determine whether they are meeting their commitments as equal opportunity employers. It gives priority to the eradication of systemic discrimination rather than to the investigation and resolution of complaints about isolated instances of discrimination." (Reynolds Metals Co. v. Rumsfeld, 4 Cir., 564 F.2d 663, 668), although it is empowered to receive and adjudicate individual complaints of discrimination against government contractors.
Both EEOC and OFCCP have investigative and cooperative authority to ascertain whether there has been a violation of the antidiscrimination requirements within their respective areas of responsibility. As distinguished from that of EEOC, however, OFCCP's investigative authority need not be triggered by any specific charge of discriminatory employment practice against a contractor. The latter agency has ongoing power to investigate or to initiate investigation by the appropriate contracting agency of any government contractor or subcontractor to ascertain whether it is complying with its contractual agreements.
With this background statement, we turn to the specifics of plaintiffs' attacks upon the 1974 Memorandum of Understanding. Admittedly, the Memorandum is a rule as that term is defined in 5 U.S.C. § 551(4), and as such was published in the Federal Register under the provisions of 5 U.S.C. § 552(a)(1)(B) and § 552(a)(1)(C). However, it is plaintiffs' contention that the pre-promulgation notice and comment requirements of § 553(b) and (c) of the Act were applicable and should have been complied with.
Exceptions from the notice and comment requirements are set forth in § 553(a)(2) and § 553(b)(A). We agree with the observation in Reynolds Metals Co. v. Rumsfeld, supra, 417 F.Supp. at 372, that "whether the Memorandum is within the exceptions depends on whether it is procedural or substantive; more precisely, whether it creates or changes existing rights and obligations." The same basic concept is expressed in the Fourth Circuit's opinion (564 F.2d 669), ruling the appeals in Reynolds: "To draw the line between substance and procedure in the context of administrative rulemaking, courts have generally *26 held that notice and comment is required if the rule makes a substantive impact on the rights and duties of the person subject to regulation. If the rule does not have such an impact, it is exempt from the notice and comment requirements of the statute."
In our judgment, the 1974 Memorandum of Understanding is procedural, involving as it does little more than the exchange of information between the agencies involved. The Memorandum has no substantive impact upon plaintiffs, in that it "neither diminishes nor increases the (companies') rights and duties under the Executive Order and Title VII." Plaintiffs argue, however, that without regard to whether the Memorandum is technically a substantive rule, it has a substantial impact on the public and is within the intendment of the notice and comment requirements of the Administrative Procedure Act.
In each of the cases cited by plaintiffs the rule under consideration in fact had a direct and immediate impact on the rights of the persons attacking the policy therein set forth. In such instances the policy expressed in the rule brought about such a significant change in the rights and liabilities of the persons affected that the policy had the force and effect of a change of law. See, for example, Lewis-Mota v. Secretary of Labor, 2 Cir. 1972, 469 F.2d 478. In this and in other cases cited by plaintiffs, the regulation was either expressly admitted to be substantive (as in Texaco v. Federal Power Commission, 3 Cir. 1969, 412 F.2d 740, 742), or was unquestionably so (as in Wagner Electric Corp. v. Volpe, 3 Cir. 1969, 466 F.2d 1013; Kelly v. Department of Interior, D.C.Cal.1972, 339 F.Supp. 1095; and P. M. A. v. Finch, D.C. Del.1970, 307 F.Supp. 858). Insofar as concerns the 1974 MEMORANDUM OF UNDERSTANDING, it is simply not true that it has any comparable, substantial, much less substantive, present impact upon any of plaintiffs.[3]
In the instant cases, it is undisputed that all of the information obtained by OFCCP from plaintiffs was and is validly required to be furnished by them pursuant to contract. So, too, the fact that the 1974 Memorandum of Understanding authorizes that information to be shared with EEOC does not of itself impose any additional burden whatever upon plaintiffs. They are not required to furnish additional information or file additional reports not mandated by their contracts. And, as we have noted, the basic policy of data sharing between the Department of Labor and EEOC was existent long before the 1974 Memorandum of Understanding was entered into and published.
Included in the regulations under the Executive Order which were promulgated in 1968[4]after notice and opportunity for comment were provisions which could only have been intended to authorize sharing information with EEOC. The regulations provide that reports and information obtained from federal contractors may be used, inter alia, in connection with the administration of the Civil Rights Act of 1964 and in furtherance of the purposes of that Act. Inasmuch as OFCCP and its compliance agencies have never had any powers with respect to the administration of the Civil Rights Act of 1964, it is self-evident that only by sharing with EEOC the information furnished to OFCCP could such information be used in connection with the administration of the Act. Invalidating the 1974 Memorandum of Understanding would not end such authorized sharing of information.
Plaintiffs further urge that without regard to the applicability of the notice and *27 comment requirements of the APA, the agencies abused their discretion in promulgating Paragraph 1 of the Memorandum of Understanding with language sufficiently broad to authorize EEOC to obtain documents which might not be relevant to a pending charge under investigation by it. That is, although the Memorandum authorizes disclosure of information to EEOC only with respect to an employer against whom a charge has been filed, it is possible that some of the information in the files of OFCCP might not be relevant to that charge. This possibility does not suffice to invalidate the Memorandum.
For one thing, the investigatory powers of EEOC are very broad. Numerous cases hold that a single charge may launch a full scale inquiry by EEOC into the employment practices of the employer, the scope of such inquiry being limited only by the requirement that it can reasonably be expected to grow out of the charge. It must not be overlooked that the 1972 amendment of Section 710 of Title VII (42 U.S.C. § 2000e-9) makes section 161 of Title 29 expressly applicable to all investigations by the EEOC. Pursuant to that section, EEOC has a right to obtain any evidence of a person being investigated "that relates to any matter under investigation." See Motorola, Inc. v. McLain, 7 Cir. 1973, 484 F.2d 1339 and EEOC v. General Electric Co., 4 Cir. 1976, 532 F.2d 359 for a full explication. As well put in General Electric, 532 F.2d, l.c. 364, "(t)he charge is not to be treated as a common law pleading that strictly cabins the investigation that results therefrom."
The present actions do not arise in the context of Title VII actions based on "reasonable cause" determinations unrelated to any charges of discrimination against plaintiffs. In fact, plaintiffs make no contention (and certainly no showing) that the information concerning them which has been requested of OFCCP is wholly unrelated to any charges being investigated by EEOC. More importantly, even if it be assumed that perforce the authorized sharing of information, EEOC might come into possession of evidence bearing upon discriminatory practices unrelated to a charge under investigation, it is our opinion that such a possibility would afford no valid basis for striking down the 1974 Memorandum of Understanding.
Surely, the insertion in Paragraph 1 of the Memorandum of Understanding of words such as "relevant or related to a charge under investigation" would make no appreciable change in the intent or purpose of the paragraph, if for no other reason than that the determination of whether information is relevant or related would necessarily be made by the very agencies who are already bound to comply with the law.
Plaintiffs assert a number of other grounds for invalidating the Memorandum of Understanding, all of which we have carefully considered and find lacking in merit. For the most part they are facts of plaintiffs' basic contention that the information sharing authorized by the Memorandum is violative of federal law. For example, plaintiffs urge that the Federal Reports Act, and in particular, 44 U.S.C. § 3508(b), precludes disclosure to EEOC of information submitted to OFCCP. The statute provides that "information obtained by a Federal agency from a person under this chapter may be released to another agency only" under four limited circumstances.
Initially, we note, as did the Court in Reynolds, supra, 417 F.Supp. at 370, that "(i)t is questionable, indeed, whether the subject matter covered by the Memorandum is within the definition of information contained in 44 U.S.C. § 3506." Be that as it may, we are convinced that subsection (b)(3) of § 3508 applies and authorizes the interagency disclosure here involved. It permits the release of information supplied to the agency if, at the time of collection thereof, the information had not "been declared by that agency or by a superior authority to be confidential." No such declaration has been made by OFCCP.[5] And the *28 fact that some courts, in reverse FOIA cases seeking to prevent public access to information, have held that certain portions of some documents are confidential in nature does not constitute a declaration of confidentiality by a "superior authority" within the meaning of that term as used in subsection (b)(4).
Plaintiffs also contend that GSA clearance should have been obtained (but was not) pursuant to the Interagency Reports Management Program[6] prior to the promulgation of the Memorandum of Understanding. In our judgment, the Program is wholly inapplicable. Interagency clearance by the General Services Administration to reports developed for use in the originating agency's own functions and thus already in existence is not required. Any other interpretation would serve no useful purpose.
One fear expressed by plaintiffs is that once EEOC obtains some of the "confidential" documents in the files of OFCCP, that information will automatically become available to charging parties and thus to other members of the public. They do not explain how or why the "danger" to them would be any less if the Memorandum had never been executed, and the "confidential" OFCCP material were furnished to EEOC on an informal basis.
44 U.S.C. Section 3508(a) expressly provides that "(i)f information obtained in confidence by a Federal agency is released by that agency to another agency, all the provisions of law including penalties which relate to the unlawful disclosure of information apply to the officers and employees of the agency to which the information is released to the same extent and in the same manner as the provisions apply to the officers and employees of the agency which originally obtained the information." It must not be overlooked that Paragraph 5 of the Memorandum of Understanding specifically provides that "(a)ll requests by third parties for disclosure of information shall be referred to the agency which initially compiled or collected the information." And the EEOC itself expressly requires the removal from its case files of all information obtained from OFCCP pursuant to the Memorandum of Understanding prior to disclosure of the material in such files. Hence, the final word (subject to subsequent judicial scrutiny) as to the release of the information by EEOC rests with OFCCP.
Plaintiffs further assert that the release to EEOC of the documents filed with OFCCP would be violative of their qualified privilege against disclosure of self-evaluative reports. We find no such privilege is available to plaintiffs under the facts of this case. See discussion in Reynolds, 564 F.2d at 667. As for plaintiffs' argument that the contract compliance program would be jeopardized if the documents are revealed to EEOC, that is a decision for the agencies, not for the court, to make.
Whether or if OFCCP would authorize EEOC to disclose any particular information to third parties is, of course, purely speculative. And it is obvious that if such disclosure were to be authorized by OFCCP as being in the public interest and on a finding that the disclosure would not impede the discharge of its functions, OFCCP would itself have released the information had the request therefor been made directly to that agency. Much of plaintiffs' arguments would be more appropriate in a reverse FOIA case rather than in an attack on the Memorandum of Understanding. We note in passing that the issue of the right of OFCCP to release "confidential" material is now before the Supreme Court, certiorari having been granted in Chrysler Corp. v. Brown, 435 U.S. 914, 98 S.Ct. 1466, 55 L.Ed.2d 504, a reverse FOIA case.[7]
*29 Further contentions such as (1) that the information sharing is "out of harmony" with Title VII, (2) that the Memorandum unlawfully permits a "cross-delegation" of authority and (3) that the release of the documents and information without a subpoena being required constitutes an unlawful search and seizure violative of the Fourth Amendment are equally lacking in substance. The first two of these contentions have in effect been ruled by our holdings, supra. As for the search and seizure argument, we agree with Reynolds, 417 F.Supp. at 373, n. 15, that interagency exchanges of information are not tied to the subpoena process.
The Memorandum of Understanding also contains a provision (Paragraph 10) pursuant to which complaints of individuals filed with OFCCP are transferred to EEOC for processing as an EEOC complaint. EEOC and OFCCP have overlapping jurisdiction to process such complaints. And since, as we have noted, OFCCP is primarily concerned with the eradication of systemic discrimination violative of contractual obligations rather than resolving complaints concerning violations of the rights of individuals, the desirability of transmitting such charges to EEOC is at once apparent. We find no unlawful delegation of the authority of OFCCP. See Reynolds, supra, 564 F.2d at 669-670. And insofar as concerns plaintiffs' contention that the notice and comment requirement of the APA should have been complied with, that point is now moot as to Paragraph 10. Revised regulations, following a notice and comment period, were issued by OFCCP in January, 1977, whereby OFCCP has specific authority to refer complaints to EEOC for processing under Title VII. See 41 CFR § 60-1.24 (42 Federal Register 3459).
The cases are appropriate for summary judgment. Further discovery is unwarranted. Whatever may have been said or done in or as the result of conferences, meetings and discussions between the various officials (then in office) prior to promulgation of the Memorandum of Understanding is legally irrelevant to the validity of the Memorandum as finally drafted and agreed to. We note that in the four years which have elapsed since its promulgation, the officials signatory thereto are no longer in office. Their successors will, we must assume, comply with the law.
What must be emphasized is that this case involves only the validity of the Memorandum of Understanding and not the manner in which it has been or could conceivably be implemented. Stated otherwise, plaintiffs appear concerned primarily with the possible, but purely hypothetical, misuse by EEOC of the data plaintiffs contractually supplied to OFCCP. We decline to invalidate the Memorandum on that basis. We hold that the 1974 Memorandum of Understanding is valid.
It follows from the foregoing that defendants are entitled to summary judgments denying injunctive relief to plaintiffs and declaring that the 1974 Memorandum of Understanding is valid.
NOTES
[1] Prior to October 5, 1978, the equal employment enforcement functions under Executive Order 11246 were delegated through the OFCCP of the Department of Labor to various compliance agencies within other departments and agencies of the federal government. On October 5, 1978, by Executive Order 12806, the enforcement responsibility of these compliance agencies was transferred to the Department of Labor. In this Memorandum Opinion we recite the facts as they existed prior to the October 5, 1978 Executive Order. However, the basic issues relating to the Memorandum of Understanding are not affected by the fact that the compliance agency is now the Department of Labor.
[2] EEO-1s are also required to be filed with EEOC pursuant to Section 709(c) of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-8(c)).
[3] By implication plaintiffs virtually concede that they can make no showing that the Memorandum has a present, immediate substantial impact upon them. They insist that they should be permitted to pursue discovery as to the manner and extent to which the Memorandum has been employed with respect to all other government contractors (who number some 275,000). We hold that such discovery is improper and obviously burdensome, as well as unnecessary for a determination of the validity of the Memorandum as applied to plaintiffs.
[4] These regulations are now 41 CFR 60-1.7(c) and 60-1.43.
[5] Reynolds (417 F.Supp. at 371) also notes that by contractually consenting to the use of the information in administering and furthering the purposes of Title VII, the contractor thereby implicitly consented to making the information available to EEOC the only agency which administers and enforces Title VII. For that reason subsection (b)(4) also applies.
[6] 41 CFR § 101-11.1100 et seq.
[7] The Circuit Court decision, sub-nom. Chrysler Corp. v. Schlesinger, is reported in 565 F.2d 1172 (3 Cir. 1977).