564 F.2d 663
 15 Fair Empl.Prac.Cas. 1185, 45 A.L.R.Fed. 1,
15 Empl. Prac. Dec. P 7878
 REYNOLDS METALS COMPANY, Appellant,
v.
Donald H. RUMSFELD, Secretary, U. S. Department of Defense,
W. J. Usery, Secretary, U. S. Department of Labor, Lawrence
Z. Lorber, Director, Office of Federal Contract Compliance
Programs, Lt. General Woodrow W. Vaughan, Director, Defense
Supply Agency, and Equal Employment Opportunity Commission,
Ethel Bent Walsh, Acting Chairman, Appellees.
REYNOLDS METALS COMPANY, Appellee,
v.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Ethel Bent Walsh,
Acting Chairman, Appellant,
and
Donald H. Rumsfeld, Secretary, U. S. Department of Defense,
W. J. Usery, Secretary, U. S. Department of Labor, Lawrence
Z. Lorber, Director, Office of Federal Contract Compliance
Programs, Lt. General Woodrow W. Vaughan, Director, Defense
Supply Agency, Defendants.
REYNOLDS METALS COMPANY, Appellee,
v.
Donald H. RUMSFELD, Secretary, U. S. Department of Defense,
W. J. Usery, Secretary, U. S. Department of Labor, Lawrence
Z. Lorber, Director, Office of Federal Contract Compliance
Programs, Lt. General Woodrow W. Vaughan, Director, Defense
Supply Agency, Appellants,
and
Equal Employment Opportunity Commission, Ethel Bent Walsh,
Acting Chairman, Defendant.
 Nos. 76-2124 to 76-2126.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 4, 1977.
Decided Oct. 14, 1977.
 
 Burt A. Braverman, Washington, D. C. (Frances J. Chetwynd, Cole, Zylstra & Raywid, Washington, D. C., Austin B. Graff, Labor Atty., on brief, Richmond, Va.), for appellant in 76-2124 and for appellee in 76-2125 and 76-2126.
 John D. Schmelzer, Atty., E.E.O.C., Washington, D. C. (Alfred G. Albert, Acting Solicitor of Labor, James D. Henry, Associate Solicitor of Labor, David A. Drachsler, Counsel for Equal Opportunity Programs, Dept. of Labor, Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, Beatrice Rosenberg, Asst. Gen. Counsel, E.E.O.C., Washington, D. C., on brief), for appellees in 76-2124 and for appellants in 76-2125 and 76-2126.
 Before LEONARD P. MOORE, Senior Circuit Judge, Second Circuit, sitting by designation, and BUTZNER and HALL, Circuit Judges.
 BUTZNER, Circuit Judge:
 
 
 1
 This appeal and cross appeal arise from the district court's grant of summary judgment in a case brought by Reynolds Metals Company seeking declaratory and injunctive relief from operation of a 1974 Memorandum of Understanding between the Equal Employment Opportunity Commission and the Department of Labor's Office of Federal Contract Compliance Programs (compliance office). The district court upheld the validity of paragraphs 1, 2, 8, and 9 of the Memorandum, which authorize these agencies to exchange information concerning employers' compliance with laws and regulations forbidding discrimination. It invalidated paragraph 10 of the Memorandum which provides that complaints filed with the compliance office shall be deemed charges filed with the commission. This paragraph also directs the compliance office to transmit such complaints to the commission.[1] We affirm the district court's decision upholding the paragraphs dealing with the exchange of information, and we reverse the ruling that paragraph 10 is invalid.
 
 
 2
 * Both the commission and the compliance office are responsible for eliminating discrimination in employment based on race, color, religion, sex, or national origin. For a number of years they have shared information obtained from employers, employees, and their own investigators. In 1974 they executed the Memorandum of Understanding to establish procedures for this exchange of information and for the transmission of complaints.[2] The agencies base their joint activity on well defined authority. The Civil Rights Act authorizes the commission to cooperate with other public agencies.[3] Likewise, the compliance office's regulations for implementing Executive Order 11246 explicitly state that information and reports obtained pursuant to those regulations will be used in connection with the administration of both the Order and the Civil Rights Act.[4]
 
 
 3
 As a government contractor, Reynolds must comply with Executive Orders 11246 and 11375[5] and with the compliance office's implementing regulations.[6] These rules require each government contractor to prepare affirmative action programs for submission to the federal agency contracting with it. The programs must identify the contractor's deficiencies concerning the equal employment of minority workers and set corrective goals and timetables. The contracting agency receiving the information is deemed a compliance agency for the purpose of enforcing Executive Order 11246. It reviews the government contractor's policies and practices concerning the employment of minorities and furnishes the compliance office detailed information on the subject, including copies of the material supplied by the contractor.
 
 
 4
 Reynolds submitted its programs and related documents to its contracting and compliance agency, the Defense Supply Agency of the Department of Defense. Pursuant to the Memorandum, the commission requested copies of the information Reynolds had furnished about its Sheffield, Alabama, facility. Reynolds then brought this action for declaratory and injunctive relief. It contends that the Memorandum of Understanding is unlawful, and it seeks to restrain the government officials responsible for the operation of the Defense Supply Agency and the compliance office from furnishing the commission information about its employment practices.
 
 
 5
 The district court held that the provisions in the Memorandum of Understanding for the exchange of information did not run afoul of the Federal Reports Act, the Administrative Procedure Act, or the regulations governing interagency reports. It also ruled that the Memorandum conformed to Title VII of the Civil Rights Act of 1964 and the Equal Employment Opportunity Act of 1972. It found no violation of the principles of administrative due process.
 
 
 6
 The district court's thorough consideration of these issues dispenses with any need for us to discuss them. We will, however, address a point Reynolds presses on appeal which the district court did not discuss, probably because Reynolds presented it only obliquely.
 
 
 7
 Reynolds asserts that its programs and related information are protected from disclosure to the commission by a qualified privilege for self-evaluative documents. It relies on Bredice v. Doctor's Hospital, Inc., 50 F.R.D. 249 (D.D.C.1970), aff'd 156 U.S.App.D.C. 199, 479 F.2d 920 (1973), a medical malpractice suit in which the court protected from disclosure reports prepared by a hospital review committee for purely internal purposes. The Bredice court justified this qualified privilege because of the need to encourage frank, candid self-evaluation.
 
 
 8
 The privilege recognized in Bredice is not available to Reynolds. The company's reports were not prepared solely for internal use, or even for the external use of only the Defense Supply Agency and the compliance office. When Reynolds contracted with the government, the regulation requiring the reports placed Reynolds on notice that they also would be used for administration of the Civil Rights Act of 1964.[7] Since the commission, not the compliance office, is charged with primary responsibility for enforcing this Act, Reynolds cannot claim that the information it furnished the Defense Supply Agency is protected by a qualified privilege from disclosure to the commission.[8]
 
 
 9
 For the reasons stated by the district court in its well considered opinion, supplemented by our discussion of Reynolds's claim of a qualified privilege, we conclude that paragraphs 1, 2, 8, and 9 of the Memorandum of Understanding are valid. Reynolds therefore is not entitled to an injunction restraining the respondents from delivering the information that the commission seeks.
 
 II
 
 10
 Paragraph 10 of the Memorandum of Understanding provides:
 
 
 11
 Complaints filed with OFCC (the compliance office) shall be deemed charges filed with EEOC and OFCC shall promptly transmit such charges to the appropriate EEOC District Office.
 
 
 12
 Reynolds contends that this provision is invalid for two closely related reasons: It unlawfully delegates to the commission the compliance office's responsibility for processing the complaints, and it was promulgated in violation of the notice and comment requirements of the Administrative Procedure Act. The government asserts that instead of delegating the compliance office's responsibility, the paragraph simply provides that the compliance office will act as an agent for the commission by receiving and transmitting misdirected complaints. Because of this limited function, the government says the notice and comment requirements of the Administrative Procedure Act are not applicable.
 
 
 13
 The district court decided that paragraph 10 provided a new means for initiating complaints to the commission and that it created a substantial impact on Reynolds because of the commission's backlog of undecided charges and the consequent exposure of the company to liability. It therefore concluded that the government's failure to comply with the notice and comment requirements of the Administrative Procedure Act invalidated paragraph 10, and it enjoined the government from implementing that paragraph insofar as Reynolds is concerned. The government filed a cross-appeal assigning error to this aspect of the court's judgment.[9]
 
 
 14
 In support of its claim that the Memorandum improperly delegates the compliance office's responsibility for processing complaints, Reynolds emphasizes that the regulations implementing Executive Order 11246 direct the compliance office and compliance agencies to promptly investigate and resolve all complaints about discrimination filed with them against a government contractor.[10] Reynolds asserts that transmitting such complaints to the commission does not comply with the regulations and constitutes an unlawful delegation of the compliance office's authority.
 
 
 15
 Reynolds's claim must be considered in light of the closely related functions of the compliance office and the commission. Moreover, the interpretation that the compliance office and the commission place on the statutes, Executive Orders, and regulations charting their respective functions deserves great deference. Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Egelston v. State University College at Geneseo, 535 F.2d 752, 755 n. 4 (2d Cir. 1976). Both agencies are charged with the responsibility of eliminating employment discrimination, but their specific missions differ. The compliance office monitors government contractors to determine whether they are meeting their commitments as equal opportunity employers. It gives priority to the eradication of systemic discrimination rather than to the investigation and resolution of complaints about isolated instances of discrimination. The duty of the compliance office and compliance agencies to receive and promptly process complaints must be considered in this context. The complaints which they process are those dealing with systemic violation of a company's contractual obligations to comply with the requirements of Executive Order 11246, rather than those dealing with the violation of rights afforded an individual employee under Title VII. The sanctions available to the compliance office terminating or suspending a contract, prohibiting a contractor from bidding on future business, and withholding progress payments reflect the systemic nature of the compliance office's concern. They are regarded by the compliance office as inappropriate remedies for a case of isolated discrimination against a single employee.
 
 
 16
 The commission, on the other hand, is responsible for dealing with complaints from individual employees about unfair employment practices. It must notify the employer of the charge, conduct an investigation, and if appropriate, attempt conciliation. Only after an individual employee has exhausted the administrative remedies afforded by the commission can he bring suit for relief under Title VII of the 1964 Act.[11]
 
 
 17
 The compliance office's transmission to the commission of individuals' complaints about discrimination facilitates the operation of both agencies and eliminates wasteful duplication of effort. It would be irresponsible for the compliance office to do nothing upon receipt of a complaint that charges a violation of Title VII. Returning the complaint to the employee with the suggestion that he send it to the commission would delay the administrative process and would accomplish nothing more than transmission by the compliance office. Time and money would be wasted if the compliance office conducted full administrative proceedings about a charge that on its face required referral to the commission. None of these alternatives is a satisfactory substitute for the simple procedure established by paragraph 10.
 
 
 18
 We conclude that the compliance office's conception of its function with respect to both systemic and isolated acts of discrimination is consistent with Executive Order 11246 and the pertinent regulations. Its decision to retain jurisdiction over acts of systemic discrimination and to transfer complaints about violations of Title VII to the commission is founded on a reasonable interpretation of those documents. Consequently, transmission of complaints to the commission pursuant to paragraph 10 is not an unlawful delegation of the compliance office's authority.
 
 III
 
 19
 The remaining issue is whether paragraph 10 was promulgated in accordance with the requirements of the Administrative Procedure Act. The Memorandum of Understanding, including paragraph 10, is a rule as defined by5 U.S.C. § 551(4), and it was published in the Federal Register as prescribed by 5 U.S.C. § 552(a)(1). However, it was not promulgated in accordance with those provisions of 5 U.S.C. § 553 which require advance public notice and an opportunity for interested persons to comment on the proposal. The government contends that the Memorandum is exempt from those rulemaking procedures because § 553 by its own terms does not apply "to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A).
 
 
 20
 To draw the line between substance and procedure in the context of administrative rulemaking, courts have generally held that notice and comment is required if the rule makes a substantive impact on the rights and duties of the person subject to regulation. If the rule does not have such an impact, it is exempt from the notice and comment requirements of the statute. See Pickus v. United States Board of Parole, 165 U.S.App.D.C. 284, 289, 507 F.2d 1107, 1112 (1974); Lewis-Mota v. Secretary of Labor, 469 F.2d 478, 481 (2d Cir. 1972); Texaco, Inc. v. Federal Power Commission, 412 F.2d 740, 744 (3d Cir. 1969); cf. EEOC v. Raymond Metal Products Co., 530 F.2d 590, 593 (4th Cir. 1976).
 
 
 21
 As our previous discussion about the functions of the commission and the compliance office indicates, examination of the practical implications of paragraph 10 reveals that it has no substantive impact on Reynolds. It neither diminishes nor increases the company's rights and duties under the Executive Order and Title VII. It simply provides an expeditious means of transmitting to the commission complaints that should have been mailed to it in the first place. The commission could probably obtain the same result prompt receipt of Title VII complaints by stationing some of its own employees at the compliance office, but at far greater expense. By either method of operation the impact on Reynolds would be the same.
 
 
 22
 It is reasonable for an agency that receives a misfiled complaint to forward it to the appropriate agency. The Supreme Court's decision in Love v. Pullman Co., 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972) supports this view. In that case, the Court approved the commission's referral of a prematurely filed charge to the appropriate state agency and its filing of the charge when the state agency declined to act on it. The Court said:
 
 
 23
 To require a second "filing" by the aggrieved party after termination of state proceedings would serve no purpose other than the creation of an additional procedural technicality. Such technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process. 404 U.S. at 526-27, 92 S.Ct. at 619.
 
 
 24
 Referring to "the flexible approach toward filing requirements taken in Love " the Second Circuit has held that a filing with the compliance office constitutes a filing with the commission. Egelston v. State University College at Geneseo, 535 F.2d 752, 755 n. 4 (2d Cir. 1976); see also EEOC v. Collator Corp., 7 F.E.P. Cases 1258 (9th Cir. 1974) summarily rev'g. 7 F.E.P. Cases 934 (W.D.Wash.1973).[12]
 
 
 25
 Although Love dealt with a different aspect of Title VII procedure, its common sense interpretation of technical filing requirements is appropriate here. An employee of a federal contractor is confronted by the procedural strictures of two administrative agencies. When he applies for relief at the wrong forum, his complaint should be promptly considered by the proper agency. By facilitating such consideration, paragraph 10 avoids technical bars to the administration of Title VII without affecting Reynolds's substantive rights.
 
 
 26
 We therefore conclude that paragraph 10 was properly promulgated by publication pursuant to 5 U.S.C. § 552(a)(1), and that there was no need to follow the notice and comment procedures of § 553.
 
 
 27
 The judgment of the district court is affirmed in part and reversed in part and this case is remanded for further proceedings consistent with this opinion.
 
 
 28
 No. 76-2124 affirmed.
 
 
 29
 No. 76-2125 reversed.
 
 
 30
 No. 76-2126 reversed.
 
 
 
 [1]
 The district court's opinion is reported as Reynolds Metals Co. v. Rumsfeld, 417 F.Supp. 365 (E.D.Va.1976). The Memorandum of Understanding is reproduced as appendix I to that opinion, 417 F.Supp. at 374-76
 
 
 [2]
 The Memorandum of Understanding was published in 39 Fed.Reg. 35855 (1975). A 1970 version was published in 35 Fed.Reg. 18461 (1970)
 
 
 [3]
 See 42 U.S.C. § 2000e-4(g)(1)
 
 
 [4]
 The pertinent regulations are 41 C.F.R. §§ 60-1.7(c) and 60-1.43. See n. 7 infra
 Executive Order 11246 is published in 30 Fed.Reg. 12319 (1965). This Order requires federal contractors to include an equal opportunity clause forbidding employment discrimination on the basis of race, color, creed, or national origin in their contracts. Contractors must also agree to take affirmative action to ensure non-discriminatory hiring and treatment of their employees.
 
 
 [5]
 Executive Order 11375, which modifies Executive Order 11246 by adding discrimination based on sex to its proscriptions, is published in 32 Fed.Reg. 14303 (1967)
 
 
 [6]
 41 C.F.R. § 60-1.1 et seq
 
 
 [7]
 41 C.F.R. § 60-1.7(c) provides:
 Reports filed pursuant to this section shall be used only in connection with the administration of the order, the Civil Rights Act of 1964, or in furtherance of the purposes of the order and said Act.
 Other information is made available for administration of the Civil Rights Act by 41 C.F.R. § 60-1.43.
 
 
 [8]
 41 C.F.R. §§ 60-1.7(c) and 60-1.43 (see n. 7 supra ) serve to distinguish this case from Westinghouse Electric Corp. v. Schlesinger, 542 F.2d 1190 (4th Cir. 1976), which holds that reports furnished pursuant to Executive Order 11246 are exempt from disclosure under the Freedom of Information Act
 
 
 [9]
 While this suit was pending, after providing notice and an opportunity to comment pursuant to the Administrative Procedure Act, 5 U.S.C. § 553, the compliance office modified its regulations to allow it to refer appropriate complaints to the commission. The compliance office did not, however, modify or rescind the Memorandum of Understanding. It said that its focus upon systemic discrimination reflects existing policy. 42 Fed.Reg. 3455 (1977)
 
 
 [10]
 See 41 C.F.R. § 60-1.24
 
 
 [11]
 See 42 U.S.C. §§ 2000e-2 and 5; Stebbins v. Nationwide Mutual Insurance Co., 382 F.2d 267 (4th Cir. 1967)
 
 
 [12]
 These cases dealt with the effect of filing a charge with the compliance office on the period of limitations set forth in Title VII, 42 U.S.C. § 2000e-5(e). This issue is not raised in the case before us