609 F.2d 898
 21 Fair Empl.Prac.Cas. 475,
21 Empl. Prac. Dec. P 30,390
EMERSON ELECTRIC COMPANY, Appellant,
v.
James A. SCHLESINGER, Lt. General Wallace Robinson, Philip
J. Davis, Ray Marshall, John H. Powell, Jr., Appellees.
McDONNELL DOUGLAS CORPORATION, a corporation, Appellant,
v.
Ray MARSHALL, Secretary, U. S. Department of Labor; John H.
Powell, Jr., Chairman, EEOC; Philip J. Davis, Director,
Office of Federal Contract Compliance; James W. Cisco,
Deputy Chief, Office of Federal Contract Compliance DCASR;
Robert T. Horner, Chief, Office of Contract Compliance
DCASR, St. Louis; and Eugene P. Keenan, District Director,
EEOC, St. Louis, Appellees.
 Nos. 79-1158, 79-1187.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 13, 1979.
Decided Nov. 21, 1979.
 
 Thomas C. Walsh, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., argued, Dennis C. Donnelly and Gary T. Carr, St. Louis, Mo., on brief, for appellants.
 Susan M. Chalker, Atty., Appellate Staff, Civil Division, Dept. of Justice, Washington, D. C., argued, for appellees, EEOC and Dept. of Labor. Barbara Allen Babcock, Asst. Atty. Gen., Leonard Schaitman, Atty., Appellate Staff, Civil Div., Dept. of Justice, Washington, D. C., and Robert D. Kingsland, U. S. Atty., St. Louis, Mo. Abner W. Sibal, Gen. Counsel; Joseph T. Eddins, Jr., Associate Gen. Counsel; Beatrice Rosenberg, Asst. Gen. Counsel; and Paul E. Mirengoff, Atty., EEOC, Washington, D. C., on brief, for appellees.
 Before HEANEY and STEPHENSON, Circuit Judges, and MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals.
 HEANEY, Circuit Judge.
 
 
 1
 Emerson Electric Company and McDonnell Douglas Corporation appeal from a ruling of the District Court upholding the validity of a 1974 "Memorandum of Understanding" providing, Inter alia, for the sharing of information between the Equal Employment Opportunity Commission (EEOC) and the Department of Labor's Office of Federal Contract Compliance Programs (OFCCP).[1] Because appellants assert a number of grounds in support of their appeal and the issues involved in this case are relatively complex, a detailed examination of the facts underlying this appeal is necessary.
 
 I.
 
 2
 Appellants, as United States government contractors, must comply with the requirements of Executive Order 11246, as amended by Executive Order 11375,[2] and the OFCCP regulations promulgated thereunder.[3] Current regulations require the appellants to submit certain reports to a compliance agency designated by the OFCCP. Included among the documents required are annual "affirmative action programs" (AAPs) prepared for each of the contractors' facilities. AAPs contain detailed analyses of the facility's work force, reports of the contractor's success or failure in taking affirmative action to employ and advance minority group members and women, and self-imposed goals for correcting deficiencies. See 41 C.F.R. §§ 60-2.10 to .14 (1978). In addition, the appellants are required to file Employer Information (EEO-1) Reports with both the compliance agency and the EEOC. These reports contain other information used in determining whether unlawful employment practices are being committed. The compliance agency analyzes the contractor's AAPs and supporting documents to determine whether the contractor has complied with the Executive Orders. OFCCP officials then prepare and file Compliance Review Reports and Complaint Investigation Reports on the contractors.
 
 
 3
 The 1974 Memorandum of Understanding that is the subject of the current dispute provides that the EEOC and the OFCCP are to share these reports and supporting documents with each other.[4] In addition, paragraph 10 of the Memorandum provides that complaints filed with the OFCCP shall be deemed to be charges filed with the EEOC.
 
 
 4
 The appellants challenge the Memorandum on the grounds that (1) it is a substantive regulation that is beyond the authority of the agencies involved; (2) it impermissibly circumvents the relevancy requirement imposed on the EEOC by Title VII of the Civil Rights Act of 1964; (3) it violates the Federal Reports Act; (4) it abridges the appellants' privilege against disclosure of self-evaluative reports; and (5) it violates the Trade Secrets Act. The District Court rejected these arguments[5] and granted the agencies' motion for summary judgment. 465 F.Supp. 22 (E.D.Mo.1978).II.
 
 
 5
 The overriding issue is whether the EEOC and the OFCCP had authority to enter into the Memorandum of Understanding. The OFCCP, as the delegate of the Secretary of Labor, claims broad authority under Section 201 of Executive Order 11246, 3 C.F.R. §§ 339, 340 (1964-1965 Compilation). That section provides: "The Secretary of Labor shall be responsible for the administration of Parts II and III of this Order and shall adopt such rules and regulations and issue such orders as he deems necessary and appropriate to achieve the purposes thereof." The EEOC derives its rulemaking authority from Section 713(a) of Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e-12(a), which provides in part: "The (EEOC) shall have authority from time to time to issue, amend, or rescind suitable procedural regulations to carry out the provisions of this subchapter."
 
 
 6
 Section 713(a) of Title VII has been interpreted to preclude the EEOC from issuing Substantive regulations. See General Electric Co. v. Gilbert, 429 U.S. 125, 141, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976); EEOC v. Raymond Metal Products Co., 530 F.2d 590 (4th Cir. 1976). Thus, whether the agencies had authority to enter into the Memorandum will depend on whether it is characterized as substantive or procedural in nature. This characterization is also significant in another respect: if the Memorandum is considered to be procedural, there is no requirement that it be promulgated in accordance with the notice and comment provisions of the Administrative Procedure Act, 5 U.S.C. § 553(a)(2), (b)(A).
 
 
 7
 Although the term "substantive" defies precise definition, a substantive rule has been held to be one that affects individual rights and obligations. Chrysler Corp. v. Brown, 441 U.S. 281, 99 S.Ct. 1705, 1718, 60 L.Ed.2d 208 (1979); Morton v. Ruiz, 415 U.S. 199, 232, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); Lewis-Mota v. Secretary of Labor, 469 F.2d 478, 482 (2d Cir. 1972). At the outset, we note that the effect of the Memorandum on the appellants is limited since the Memorandum deals only with interagency exchanges of information. No public disclosure is authorized or contemplated. Many of the harms claimed by the appellants would result only if the information transferred between the agencies were disclosed to the public. The appellants, however, have failed to show that public disclosure is made more likely by the Memorandum. The terms of the Memorandum itself provide safeguards against public disclosure. Paragraph 5 of the Memorandum provides: "All requests by third parties for disclosure of information shall be referred to the agency which initially compiled or collected the information." In keeping with this provision, the EEOC Compliance Manual, which governs the day-to-day operations of the EEOC, expressly states that prior to disclosure of a case file, "(a)ll information obtained from OFCCP or any of its constituent contract compliance agencies pursuant to the Memorandum of Understanding, paragraph 5, will be removed." EEOC Compl. Man. (BNA) P 83.6(g). Moreover, even with this information removed, EEOC disclosure will be made only to persons within a few limited categories, and then only when the receiving party agrees, in writing, not to make the information public "except in the normal course of a civil action or other proceeding instituted under Title VII." EEOC Compl. Man. P 83.3(b); See id., at P P 83.1-.5. Indeed, § 709(e) of Title VII, 42 U.S.C. § 2000e-8(e), imposes criminal penalties on EEOC employees who disclose to the public information obtained by the EEOC prior to institution of a proceeding under Title VII. Finally, the Memorandum's impact on the appellants is further limited by the Trade Secrets Act, which, as detailed later in this opinion, prohibits public disclosure of certain information by either the EEOC or the OFCCP.
 
 
 8
 Whether a given rule affects individual rights and obligations, of course, depends largely on the rights and obligations in existence at the time of the rule's promulgation. To determine the preexisting rights and obligations of the parties in this instance, it is necessary to carefully examine the sources from which the agencies draw their authority.
 
 
 9
 The common goal of the EEOC and the OFCCP is to eradicate employment discrimination. The agencies' areas of responsibility, however, are distinct. The OFCCP is responsible for ensuring that federal contractors comply with their statutory and contractual obligations, while the EEOC deals with the complaints of individual employees. See Reynolds Metals Co. v. Rumsfeld, 564 F.2d 663, 668 (4th Cir. 1977), Cert. denied, 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 84 (1978). Nevertheless, the functions of the agencies are closely related, and there is sufficient evidence to indicate that Congress intended the two agencies to cooperate and share information when possible.
 
 
 10
 The most direct indication that Congress intended that the EEOC cooperate with other agencies is found in the language of the Civil Rights Act. Section 705, 42 U.S.C. § 2000e-4(g)(1), provides: "The (EEOC) shall have power * * * to cooperate with and, with their consent, utilize regional, State, local, and other agencies, both public and private, and individuals(.)" There is no reason to hold that the "consent" provided for in this section could not be obtained through a formal Memorandum of Understanding. And if the word " utilize" is to have any meaning at all in this context, it must contemplate an exchange of information between the agencies. Moreover, the authorization to cooperate with other agencies is unambiguous. Indeed, § 2000e-4(h) provides that the EEOC Shall cooperate with other departments and agencies in its promotional and educational activities.
 
 
 11
 Further evidence of the congressional policy encouraging cooperation among civil rights agencies is found in Section 715 of the Civil Rights Act, 42 U.S.C. § 2000e-14. That section, added to the Act in 1972, establishes the Equal Employment Opportunity Coordinating Council for the purpose of
 
 
 12
 developing and implementing agreements, policies and practices designed to maximize effort, promote efficiency, and eliminate conflict, competition, duplication and inconsistency among the operations, functions and jurisdictions of the various departments, agencies and branches of the Federal Government responsible for the implementation and enforcement of equal employment opportunity legislation, orders, and policies.
 
 
 13
 The history of the Equal Employment Opportunity Act of 1972 also supports our conclusion that Congress intended to encourage cooperation between the OFCCP and the EEOC. Both the original House bill, H.R. 1746, and the original Senate bill, S. 2515, provided that the OFCCP was to be merged into the EEOC with the EEOC taking over the contract compliance program enforcement called for in Executive Order 11246. The House Report explained the reason for this provision, referring to the original OFCCP/EEOC Memorandum of Understanding:
 
 
 14
 Although administrative efforts have been made to coordinate the overlapping legal jurisdictions of the (EEOC) and (OFCCP), such as the memorandum of understanding agreed to in May 1970, they have not been effective. * * * As a result, the entire Federal effort to end employment discrimination in the private sector has suffered.
 
 
 15
 H.R.Rep. No. 238, 92d Cong., 2d Sess., Reprinted in (1972) U.S.Code Cong. & Admin.News, pp. 2137, 2151.
 
 
 16
 The provision calling for the OFCCP/EEOC merger was deleted from the enacted law. The appellants assert that the Memorandum is an attempt to reinstate the deleted portion of the original bills, in defiance of congressional intent. This is clearly not the case. First, authorizing interagency exchanges of information and complaints is not equivalent to abolishing the OFCCP. The Memorandum does not expand or contract the powers of either agency; the OFCCP is still charged with administering the contract compliance program, the EEOC with enforcing Title VII. Although, pursuant to paragraph 10 of the Memorandum, complaints filed with the OFCCP are to be deemed charges filed with the EEOC, the OFCCP does not relinquish authority over such cases.
 
 
 17
 Second, the legislative history of the 1972 Act makes it clear that the interagency merger was deleted from the law primarily because of fears that administrative burdens would weaken the contract compliance program, not, as the appellants suggest, because Congress sought to prohibit interagency cooperation. See Senate Comm. on Labor and Public Welfare, 92d Cong., 2d Sess., Legislative History of the Equal Employment Opportunity Act of 1972, at 916-917 (Comm.Print.1972) (remarks of Sen. Saxbe); H.R.Rep. No. 238, 92d Cong., 2d Sess., Reprinted in (1972) U.S.Code Cong. & Admin.News, pp. 2137, 2172-2173 (minority views). To the extent that the Memorandum serves to increase the efficiency and enforcement capabilities of the agencies, therefore, it is consistent with, not contrary to, legislative intent.
 
 
 18
 Like the Civil Rights Act, Executive Order 11246 contains ample evidence of intent to authorize cooperation and information exchanges between the EEOC and the OFCCP. Section 209(a)(3) of the Order authorizes the Secretary of Labor (the "parent" of the OFCCP) to "(r)ecommend to the (EEOC) * * * that appropriate proceedings be instituted under Title VII(.)" Presumably, the Secretary is to provide some basis for his opinion. It is highly unlikely that the Secretary would be directed to forward recommendations to the EEOC but not be permitted to transfer information supporting the recommendations.
 
 
 19
 Moreover, the OFCCP regulations implementing Executive Order 11246 put the companies on notice that the agencies intended to share information. Those regulations, published for notice and comment in 1968, state that the EEO-1 and AAP reports filed with the OFCCP shall be used "in connection with the administration of the order, the Civil Rights Act of 1964, or in furtherance of the purposes of the order And said Act." 41 C.F.R. § 60-1.7(c) (1978) (emphasis added). A nearly identical directive is contained in 41 C.F.R. § 60-1.43 pertaining to information obtained by the OFCCP during on-site compliance reviews and inspections. The OFCCP has never had any authority to enforce the provisions of the Civil Rights Act of 1964; primary responsibility for administering the employment provisions of Title VII has been given to the EEOC. Hence, reports and information given to the OFCCP could be used "in connection with the administration of * * * the Civil Rights Act of 1964" only if shared with the EEOC.
 
 
 20
 This examination of the language of the Civil Rights Act of 1964 and its 1972 amendments, Executive Order 11246 and regulations properly promulgated thereunder, and the legislative history of these pronouncements, leads us to conclude that the Memorandum of Understanding "neither diminishes nor increases the (companies') rights and duties(.)" Reynolds Metals Co. v. Rumsfeld, supra at 669. We hold, therefore, that the District Court was correct in finding the Memorandum to be procedural in nature. Accordingly, the issuance of the Memorandum was not beyond the rulemaking authority of either the OFCCP or the EEOC.
 
 
 21
 Furthermore, because the Memorandum is procedural in nature, the District Court was also correct in concluding that the agencies were not required to comply with the notice and comment provisions of the Administrative Procedure Act, 5 U.S.C. § 553. We note, however, that the agencies might find it advisable to provide opportunity for interested parties to comment on proposed rules in cases in which there may be some question about whether individual rights and obligations will be affected. Such a procedure would not only ensure fairness to all interested parties, but would provide an opportunity for the agencies to educate themselves as to the potential consequences of their action.
 
 III.
 
 22
 The appellants contend that, notwithstanding the agencies' general authority to enter into agreements with each other, the Memorandum of Understanding is invalid because it impermissibly circumvents the relevancy requirement imposed on the EEOC by Section 709(a) of Title VII, 42 U.S.C. § 2000e-8(a). The original OFCCP/EEOC Memorandum of Understanding, published in 1970, 35 Fed.Reg. 8461 (1970), provided that the EEOC could obtain from the OFCCP only those documents "relevant to EEOC's investigation." The appellants maintain that the absence of this language in the 1974 Memorandum is fatal. We disagree.
 
 
 23
 The primary responsibility for enforcing the requirements of Title VII rests with the EEOC. In order to effectuate the purposes of the Civil Rights Act, therefore, the statutory provisions authorizing EEOC investigations must be read to give the EEOC broad investigatory power. See Motorola, Inc. v. McLain, 484 F.2d 1339 (7th Cir. 1973), Cert. denied, 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 287 (1974); Graniteville Co. (Sibley Div.) v. EEOC,438 F.2d 32 (4th Cir. 1971). When so read, § 2000e-8(a) does not require invalidation of the Memorandum. First, the language of the statute indicates that it applies only to information belonging to or in the possession of the person being investigated, not to information in the lawful possession of another agency. 42 U.S.C. § 2000e-8(a) provides:
 
 
 24
 In connection with any investigation of a charge filed under section 2000e-5 of this title, the (EEOC) or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation.
 
 
 25
 We construe the word "of" in the phrase "evidence of any person being investigated" to mean "belonging to" or "in the possession of" such persons. This reading is consistent with the broad purposes of Title VII while, at the same time, it protects against burdensome EEOC "fishing expeditions" into the files of charged parties. See Reynolds Metals Co. v. Rumsfeld, 417 F.Supp. 365 (E.D.Va.1976), Aff'd in part, rev'd in part on other grounds, 564 F.2d 663 (4th Cir. 1977), Cert. denied, 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 84 (1978).
 
 
 26
 Second, the information sought by the EEOC from the OFCCP is, almost by definition, relevant to a pending employment discrimination charge. OFCCP compliance agency files contain only reports collected for the purpose of determining whether the employer is engaging in employment discrimination. Information on the size and composition of an employer's workforce is undeniably relevant to a charge of employment discrimination. Even information on distant facilities may be relevant to show a pattern and practice of discrimination. The remote possibility that some irrelevant information might be transferred to the EEOC is not grounds for invalidating the Memorandum.
 
 IV.
 
 27
 The appellants also contend that the Memorandum of Understanding violates the Federal Reports Act, 44 U.S.C. §§ 3501-3512. They point to § 3508(b) of the Act which provides that "(i)nformation obtained by a Federal agency from a person under this chapter may be released to another Federal agency only" if one of four conditions is met. Two of these conditions are admittedly inapplicable here. The District Court found, however, that the other two conditions outlined in § 3508(b)(2) and (3) have been satisfied.
 
 
 28
 Before reviewing the statutory language, we emphasize that the two-fold purpose of the Federal Reports Act is to eliminate unnecessary duplication of effort by federal agencies in collecting information and to reduce the paperwork burden on persons supplying the information. 88 Cong.Rec. 9165 (1942). This purpose is reflected in the language of the opening section of the Act, 44 U.S.C. § 3501:
 
 
 29
 Information needed by Federal agencies shall be obtained with a minimum burden upon business enterprises, especially small business enterprises, and other persons required to furnish the information, and at a minimum cost to the Government. Unnecessary duplication of efforts in obtaining information through the use of reports, questionnaires, and other methods shall be eliminated as rapidly as practicable. Information collected and tabulated by a Federal agency shall, as far as is expedient, be tabulated in a manner to maximize the usefulness of the information to other Federal agencies and the public.
 
 
 30
 Thus, the provisions of the Act are to be read with an eye toward encouraging interagency cooperation and discouraging duplicative reporting requirements.
 
 
 31
 Subsection (b)(2) of § 3508 expressly allows interagency exchange of information "if the information as supplied by persons to a Federal agency had not, at the time of collection, been declared by that agency or by a superior authority to be confidential(.)" The appellants assert that federal courts are to be considered a "superior authority" within the meaning of this section. Information to be exchanged pursuant to the Memorandum of Understanding, they argue, has been declared confidential in recent court decisions. In support of this proposition, the appellants cite Westinghouse Elec. Corp. v. Schlesinger, 542 F.2d 1190 (4th Cir. 1976), Cert. denied, 431 U.S. 924, 97 S.Ct. 2199, 53 L.Ed.2d 239 (1977); and General Dynamics Corp. v. Dunlop, 427 F.Supp. 578, 582 (E.D.Mo.1976), Rev'd on other grounds sub nom. General Dynamics Corp. v. Marshall, 572 F.2d 1211 (8th Cir. 1978), Vacated and remanded, 441 U.S. ----, 99 S.Ct. 2024, 60 L.Ed.2d 392 (1979).
 
 
 32
 We are unconvinced by this argument. Both cases cited by the appellants involved a determination of whether contractor AAPs were to be considered "confidential" within the meaning of Exemption 4 of the Freedom of Information Act, 5 U.S.C. § 552(b)(4). Those cases thus dealt only with public disclosure of information. No court has held the materials involved in this case to be confidential for purposes of interagency exchange, and we decline to so hold here. It cannot be said, therefore, that the courts have held this information to be confidential within the meaning of 44 U.S.C. § 3508(b)(2).[6]
 
 
 33
 The appellants' assertion that the agency itself has declared the material in question to be confidential is without merit. In paragraph 6 of its complaint, McDonnell Douglas Corporation avers only that agents of the OFCCP represented to the appellants that the information received would be confidential.[7] It offers no affidavits or other evidence explaining the circumstances or details of the alleged representation, nor does it allege that the representation concerned interagency disclosure. As noted, statements concerning confidentiality vis-a-vis the public do not compel the conclusion that disclosure to another agency is forbidden. Under these circumstances, we decline to hold that the information to be exchanged pursuant to the Memorandum has been declared by the agency to be confidential within the meaning of 44 U.S.C. § 3508(b)(2).
 
 
 34
 A second ground for holding that the Federal Reports Act does not forbid the disclosure contemplated by the Memorandum is found is subsection (b)(3) of § 3508. That section permits interagency disclosure "when the persons supplying the information consent to the release of it to a second agency * * * ." As detailed in part II of this opinion, the appellants have " explicitly consented to the information being used to administer Title VII and, thereby, implicitly consented to that information being made available to Title VII's enforcing agency, the EEOC." Reynolds Metals Co. v. Rumsfeld, 417 F.Supp. at 371.
 
 V.
 
 35
 The appellants next assert that implementation of the Memorandum of Understanding would violate a privilege against disclosure of self-evaluative documents. In limited circumstances, some courts have held that defendants have a qualified privilege against disclosing self-evaluative reports. See Bredice v. Doctors Hospital, Inc., 50 F.R.D. 249 (D.D.C.1970), Aff'd, 156 U.S.App.D.C. 199, 479 F.2d 920 (D.C.Cir.1973). This is not such a circumstance, however. First, unlike the situation in Bredice, the reports to be exchanged under the Memorandum are not made solely for internal use. As noted, AAPs and other documents are submitted to the OFCCP with the express understanding that they will be used in the administration of Executive Order 11246 and the Civil Rights Act. Second, the qualified privilege asserted by the appellants has been found to exist only in the context of pretrial discovery, an area in which the trial judge has broad discretionary powers. Third, the rationale underlying the qualified privilege encouraging complete and candid self-evaluations is less persuasive in this case because the reports are disclosed only to federal agencies, not to third parties.
 
 VI.
 
 36
 The appellants' final contention is that the Trade Secrets Act, 18 U.S.C. § 1905, prohibits the interagency disclosure called for in the Memorandum of Understanding. Section 1905 makes it illegal for a federal government employee to disclose certain trade secret information unless such disclosure is authorized by law.[8]
 
 
 37
 We will assume, without deciding, that the documents submitted to the OFCCP by the appellants contain information of the type protected by § 1905. Nevertheless, we are convinced that § 1905 does not invalidate the Memorandum. As is made clear in section II of this opinion, the pronouncements of Congress, the President and the agencies authorize the type of interagency exchange provided for in the Memorandum. Accordingly, we hold that interagency cooperation and disclosure is "authorized by law" within the meaning of § 1905.
 
 
 38
 It is again worth emphasizing that the disclosure contemplated by the Memorandum is between two agencies, both of which are charged with the task of eliminating employment discrimination. We seriously doubt whether § 1905 was intended to prohibit any interagency information transfers. Since the Federal Reports Act, 44 U.S.C. §§ 3501-3512, directly controls exchanges between agencies, it appears that § 1905 was designed to apply only to public disclosures of trade secret material. Were such public disclosures involved, of course, § 1905 would operate to protect the confidentiality interests of the employers involved. See Chrysler Corp. v. Brown, supra.
 
 
 39
 For the foregoing reasons, the order of the District Court is affirmed.
 
 
 
 *
 HOWARD T. MARKEY, Chief Judge, United States Court of Customs and Patent Appeals, Washington, D. C., sitting by designation
 
 
 [1]
 The OFCCP was formerly known as the Office of Federal Contract Compliance
 
 
 [2]
 Executive Order 11246, 3 C.F.R. 339 (1964-1965 Compilation), directs the Secretary of Labor to take various specified and unspecified actions to prevent federal government contractors from engaging in employment discrimination on the basis of "race, creed, color, or national origin." Executive Order 11375, 32 Fed.Reg. 14,303 (1967), added six proscribed bases of discrimination to the list contained in Executive Order 11246
 
 
 [3]
 41 C.F.R. §§ 60-1.1 to 741.54 (1978)
 
 
 [4]
 The 1974 Memorandum superceded a similar OFCCP/EEOC Memorandum of Understanding providing for interagency cooperation and information sharing. 35 Fed.Reg. 8461 (1970)
 
 
 [5]
 The appellants' final argument that the Memorandum violates the Trade Secrets Act is apparently raised for the first time on appeal and was not considered by the District Court
 
 
 [6]
 Because we find that no court has declared the materials involved in this case to be confidential for interagency disclosure purposes, we need not decide whether the federal courts are "superior authorities" within the meaning of the Act
 
 
 [7]
 Emerson Electric's complaint is devoid of even this allegation
 
 
 [8]
 The full text of 18 U.S.C. § 1905 is as follows:
 Whoever, being an officer or employee of the United States or of any department or agency thereof, publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; shall be fined not more than $1,000, or imprisoned not more than one year, or both; and shall be removed from office or employment.