**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ANTHONY CRAIG WALKER,
Plaintiff-Appellant,

v.

NOVO NORDISK PHARMACEUTICAL

INDUSTRIES, INCORPORATED,
Defendant-Appellee,

No. 99-2015

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
Amicus Curiae.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-98-302-5-BO)

Argued: June 6, 2000

Decided: July 24, 2000

Before LUTTIG, TRAXLER, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Craig James, LAW OFFICE OF CRAIG JAMES, Smith-
field, North Carolina, for Appellant. Jennifer Susan Goldstein, Office
of General Counsel, EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Washington, D.C., for Amicus Curiae. William

Charles Livingston, KENNEDY, COVINGTON, LOBDELL & HICKMAN, L.L.P., Charlotte, North Carolina, for Appellee. **ON BRIEF:** C. Gregory Stewart, General Counsel, Philip B. Sklover, Associate General Counsel, Lorraine C. Davis, Assistant General Counsel, Office of General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. Christopher L. Ekman, KENNEDY, COVINGTON, LOB-DELL & HICKMAN, L.L.P., Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Anthony Craig Walker ("Walker") appeals from a grant of summary judgment in favor of Novo Nordisk Pharmaceutical, Inc. ("Novo Nordisk") on his Title VII religious accommodation claim. We affirm.

I.

Appellee Novo Nordisk is one of only two suppliers of insulin in the United States and operates an insulin manufacturing facility in Clayton, North Carolina. Appellant Walker was employed by Novo Nordisk from April 1995 to April 1997.

Walker's first position with Novo Nordisk was that of a filling operator, part of a seven-member team of employees responsible for operating and maintaining machines that fill insulin into vials and cartridges to be used by persons suffering with insulin-dependent diabetes. At some point, Walker and four other members of his shift informed the company that they preferred not to work on Sundays for religious reasons. However, on Sunday, November 24, 1996, Walker and the others were required to work because the "fill" for a batch of insulin which had been manufactured could not be completed on Sat-

2

urday. Because a batch of insulin, once formulated, must be discarded if not filled within five days, Novo Nordisk could not stop its fill and begin again on Monday. And, both shifts at Novo Nordisk were necessary to complete the fill, a situation that had never previously existed. As a result, Walker was unable to swap shifts to avoid working. He worked, but informed the company that he was doing so "under protest."

As a drug manufacturer, Novo Nordisk is subject to regulation by the federal Food & Drug Administration ("FDA"), including the FDA requirement that it maintain a quality assurance program that will prevent bacterial contamination of the insulin product. On December 12, 1996, Walker was transferred, at his request, to Novo Nordisk's Quality Assurance Department as an environmental technician. While in this position, Walker was asked to work two additional Sundays, February 23 and March 9, 1997. Walker testified that he worked, without complaint, because he was one of only two people trained to perform environmental technician duties in the aseptic area of the facility, and he did not want the burden of all of the Sunday work to fall on his co-employee.

In his position as an environmental technician, Walker was responsible for monitoring certain aspects of the manufacturing process for microbiological growth. Specifically, Walker's position required him to test various areas of the plant using Rodac plates, wait for a period of possible growth, and then record his findings. On several occasions, however, Walker erroneously recorded an "O" for no microbiological growth when in fact such growth existed. Believing that Walker was falsifying his documentation, Novo Nordisk terminated him on April 11, 1997.

On April 15, 1997, Walker and four other employees filed a complaint with the Office of Federal Contract Compliance Programs ("OFCCP"). Although Walker admitted the documentation errors, he blamed them on inadequate training and alleged that he had been discriminated against based upon his race, sex, and religion. The OFCCP issued the results of its investigation on August 20, 1997:

> Our investigation found that the contractor violated its obligations under the affirmative action provisions of its

> Federal contract by: not placing the burden on the employer to provide an accommodation policy for individuals with religious accommodation requests. . . .
>
>  The investigation did not find that the contractor violated the nondiscrimination provisions of its contracts in the termination of Charntetzky and Walker. Both employees admitted that they falsified data. The severity of their misconduct, according to company policy could result in termination at the discretion of management. The company chose to terminate them, along with two other individuals whose records showed similar infractions. They had not identified themselves as christians.

J.A. 27 (emphasis omitted).

On October 1, 1997, Walker filed a charge of discrimination with the EEOC alleging that he was denied religious accommodation and discriminated against because of his religious beliefs and race. The EEOC issued a right-to-sue letter on January 13, 1998. Then, on April 13, 1998, Walker filed a lawsuit in the district court alleging that his employer discriminated against him on the basis of his religious beliefs, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e to 2000e-17 (West 1994 & Supp. 2000). Specifically, Walker alleged that Novo Nordisk failed to accommodate his religious beliefs by requiring him to work on Sundays and terminated him because of his religious beliefs and his request for religious accommodation.

Novo Nordisk moved for summary judgment, which the district court granted. With regard to Walker's claims that Novo Nordisk failed to accommodate his religious practices by requiring him to work on three Sundays, the district court determined that the claim was barred by Walker's failure to file a timely charge of discrimination with the EEOC. With regard to Walker's claim that he was terminated for his religious beliefs, the district court concluded that Walker failed to establish a prima facie case because Walker was not performing his job in a satisfactory manner and that, in any event, he had failed to show that Novo Nordisk's reasons for discharging him were pretextual.

4

II.

A.

Under the Civil Rights Act, an employer may not discriminate against an employee on the basis of religious preferences. See 42 U.S.C.A. § 2000e-2. Religious discrimination claims may be brought under two theories: (1) "disparate treatment" claims and (2) "failure to accommodate" claims. See Chalmers v. Tulon Co., 101 F.3d 1012, 1017 (4th Cir. 1996).

"To prove a claim under the disparate treatment theory, an employee must demonstrate that the employer treated[him] differently than other employees because of [his] religious beliefs." Id. (emphasis omitted). If the employee cannot show that he was treated differently because of his religious beliefs or cannot rebut an employer's legitimate, non-discriminatory reason for his discharge, he may still be able to establish a religious accommodation claim based upon Title VII's requirement that an employer reasonably accommodate religious observances or practices, unless such accommodation will impose undue hardship on the employer's business. See 42 U.S.C.A. §§ 2000e-2(a), 2000e(j).

In the instant case, Walker does not appeal the district court's grant of summary judgment to Novo Nordisk on his disparate treatment claim. Rather, the sole issue on appeal is whether the district court erred in granting summary judgment to Novo Nordisk on Walker's religious accommodation claim. We conclude that it did not.

B.

In order to state a claim for a violation of Title VII, the plaintiff must file an EEOC charge within 180 days after the alleged unlawful employment action occurs. See 42 U.S.C.A.§ 2000e-5(e)(1); Beall v. Abbott Lab., 130 F.3d 614, 620 (4th Cir. 1997). The failure to file a timely complaint with the EEOC bars the claim in federal court. See McCullough v. Branch Banking & Trust Co., 35 F.3d 127, 131 (4th Cir. 1994) ("When the plaintiff fails to file such a complaint in a timely fashion with the EEOC, the claim is time-barred in federal

5

court. This filing requirement acts as a 180-day statute of limitations. . . ." (internal citation omitted)). However,"filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (footnote omitted).

In the instant case, Walker claims that Novo Nordisk failed to accommodate his request that he not be required to work on Sundays based upon the fact that he worked a total of three Sundays during his employment -- November 24, 1996, February 23, 1997, and March 9, 1997. And, while he acknowledges that none of these events took place within 180 days of his filing a complaint with the EEOC, he asserts that his EEOC claim was timely because they all took place within 180 days of his filing his complaint with the OFCCP. Relying upon a Memorandum of Understanding ("MOU") between the OFCCP and the EEOC concerning the filing of complaints, and upon our prior decision in Reynolds Metals Co. v. Rumsfeld, 564 F.2d 663 (4th Cir. 1977), Walker asserts that by filing a complaint with the OFCCP, he tolled the time period for filing with the EEOC. We disagree.

In rejecting Walker's contention that his EEOC claim was timely, we look to the plain language of Title VII and the MOU in effect at the time Walker filed his complaint with the OFCCP. Title VII requires that a charge be filed with the EEOC, see 42 U.S.C.A. § 2000e-5(e), which in turn triggers the investigatory and remedial process called for by the Act, see 42 U.S.C.A § 2000e-5(a)-(d). The Act does not, however, contemplate that filing a complaint with another agency can or should be deemed a filing with the EEOC for purposes of § 2000e-5(e). See e.g., Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980) (recognizing that "strict adherence to the procedural requirements specified by the legislature [in§ 2000e-5(e)] is the best guarantee of evenhanded administration of the law").

Turning to the language of the MOU between the OFCCP and the EEOC in effect at the time Walker filed his complaint with the OFCCP, we also find nothing that would indicate that the MOU intends to affect the time limits for filing with the EEOC. Rather, the MOU provides only that:

6

> [c]omplaints filed with OFCCP within the jurisdiction of EEOC <u>which OFCCP refers to EEOC</u> shall be deemed charges filed jointly with EEOC. OFCCP shall promptly transmit all such charges to the appropriate EEOC Field Office.

46 Fed. Reg. 7435, 7438 (1981) (emphasis added). The MOU does not dictate that a complaint filed with the OFCCP is tantamount to filing with the EEOC, or that such complaints must be automatically forwarded or referred to the EEOC to initiate the EEOC's investigatory process. Rather, by its explicit terms, the MOU provides only that a charge of discrimination filed with the OFCCP shall be deemed a charge filed jointly with the EEOC <u>if</u> the OFCCP actually refers the complaint to the EEOC. <u>See NAACP Labor Committee v. Laborers' Int'l Union</u>, 902 F. Supp. 688, 703-04 (W.D. Va. 1993), <u>aff'd Baltimore v. Laborers' Int'l Union</u>, No. 93-1810, 1995 WL 578084 (4th Cir. Oct. 2, 1995) (holding that a Title VII charge filed with the OFCCP was "filed" for purposes of 42 U.S.C.A.§ 2000e-5(e) "when the EEOC actually receive[d] the charge" from the OFCCP, and not when the OFCCP received the charge); <u>but see Egelston v. State Univ. College</u>, 535 F.2d 752, 755 n.4 (2d Cir. 1976) (noting that the court would "consider the filing with the OFCC as constituting a filing with the EEOC").

Additionally, we note that because the OFCCP never referred Walker's complaint to the EEOC, the plain language of the MOU would in any event have no application to Walker's charges in this case. And, in fact, the EEOC did not treat the OFCCP complaint as an EEOC charge. Rather, Walker was required to complete a new charge form and the EEOC did not backdate the charge to the date of the OFCCP complaint.

Nor are we persuaded that our decision in <u>Rumsfeld</u> requires a different result. In <u>Rumsfeld</u>, this court upheld paragraph 10 of the 1974 version of the MOU between the OFCCP and the EEOC which provided that:

> [c]omplaints filed with OFCC [the compliance office] shall be deemed charges filed with EEOC and OFCC shall promptly transmit such charges to the appropriate EEOC District Office.

7

Rumsfeld, 564 F.2d at 667 (alteration in original) (internal quotation marks omitted). Rejecting a challenge that paragraph 10 amounted to an improper delegation of the OFCCP's responsibility for processing complaints and was promulgated in violation of the Administrative Procedures Act, we held that "the paragraph simply provides that the

compliance office will act as an agent for the commission by receiving and transmitting misdirected complaints." Id. But we expressly noted that the issue of "the effect of filing a charge with the [OFCCP] on the period of limitations set forth in Title VII" had not been raised. Id. at 670 n.12.

Having now been presented with that precise question, we conclude that filing a complaint with the OFCCP does not, by virtue of the 1981 MOU between the OFCCP and the EEOC, operate to toll the 180-day time period required by 42 U.S.C.A. § 2000e-5(e).*

III.

For the foregoing reasons, we affirm the district court's decision granting summary judgment to Novo Nordisk on Walker's Title VII claims.

AFFIRMED

_____

*We note that an amended MOU was entered between the two agencies in 1999, see 64 Fed. Reg. 17,664, 17,666 (1999), which states that:

> Complaints of employment discrimination filed with OFCCP under Executive Order 11246 will be considered charges simultaneously filed under Title VII whenever the complaints also fall within the jurisdiction of Title VII. For the purpose of determining the timeliness of such a charge . . ., the date the matter was received by OFCCP shall be deemed to be the date it was received by EEOC.

Id. We express no opinion on whether, under this MOU, Walker's complaint would be considered timely under 42 U.S.C.A.§ 2000e-5(e).